**In re Philip B. JOHNSON, Debtor.**

**Laurie A. JOHNSON, Plaintiff,**

**v.**

**Philip B. JOHNSON, Defendant.**

Bankruptcy No. 95–13296–7.
Adversary No. 96–5048.

United States Bankruptcy Court,
D. Kansas.

Sept. 15, 1997.

Ronald L. Leslie, Hutchinson, KS, for Debtor/Defendant.

Dana L. Gorman, Independence, KS, David A. Kaserman, Oklahoma City, OK, for Plaintiff.

D. Michael Case, Wichita, KS, trustee.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court as a result of the Complaint to Determine Dischargeability of a Debt Pursuant to

§ 523(a)(15) filed by Laurie A. Johnson. A trial was held on January 6, 1997, at which time the Court took the matter under advisement.

## JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## FINDINGS OF FACT

Philip B. Johnson filed for relief under Chapter 7 of Title 11 on or about November 7, 1995. On September 8, 1995, a Journal Entry and Decree and Divorce was entered in the District Court of McPherson County, State of Kansas, captioned "In The Matter of the Marriage of Philip B. Johnson and Laurie A. Johnson."

The Divorce Decree notes that the parties were married on November 13, 1982, and that no children were born to the marriage. The Decree also notes that the parties' real estate has been sold per agreement, and that respondent (Laurie Johnson) agrees to be responsible for any "deficiency" that may be owed to her stepfather and mother, Harold and Josephine Martin, and that petitioner (Philip Johnson) shall be held wholly harmless for said obligation. Pursuant to the Decree, the debts of the parties were divided as follows:

> The parties shall divide the obligation to Great Plains Federal Credit Union in the approximate sum of $8,000.00 ($4,000.00 to each); respondent shall be solely responsible for the obligation to Bank IV (which has a net balance of approximately $5,000.00); the MasterCard of approximately $4,000.00 shall be paid by petitioner; the VISA bill shall be divided in the following manner: Petitioner shall pay $3,070.00 of the obligation on the VISA bill and the remainder being divided equally between them. The balance is approximately $8,600.00 and, therefore, petitioner's obligation would be approximately $5,835.00 and respondent's obligation would be approximately $2,765.00—the exact balance to be determined by the present VISA statement. Respondent shall be solely responsible for the payment of Pen-

ney's, Dillard's, Dr. Cotton and the Great Plains Federal Credit Union overdraft and, as stated above, any potential obligation to Harold or Josephine Martin.

The Decree went on to provide that "[m]aintenance or alimony is not ordered against either party."

When the parties separated, Laurie Johnson was working for Great Plains Federal Credit Union ("Great Plains") and was making $2,163.00 per month. Thus, she was making approximately $25,000.00 per year when she voluntarily left Great Plains in July of 1995. Her 1995 income tax return shows that she earned $15,136.00 from Great Plains, since she only worked there through July 21 of that year. Now, she has remarried and works for her husband's company as a substitute office worker making $800.00 per month. Her husband, along with a partner, owns Submersible Pumps, Inc., which manufactures and sells submersible oil well pumps. She testified that her husband's company is downsizing and has laid off half of its work force in the last six months.

Laurie Johnson and her new husband have a joint car loan and no other debts. She has no assets other than this jointly acquired 1994 Oldsmobile, her household goods and personal items.

Laurie Johnson testified that she has paid a total of $34,967.90 per the Divorce Decree. She made these payments from her salary at Great Plains, a loan out of her retirement account, and proceeds from the sale of the home and her car. She has satisfied her obligation to pay half of the debt to Great Plains ($4,000.00). She sold her car and applied the proceeds to the car loan at Bank IV. She is still making payments on the $5,000.00 balance on the car loan. She has also paid the debts to Penneys ($200), Dillards ($800), Dr. Cotton ($600), Discover Card ($908.34), American Express ($508.16), and the insufficient funds check to Great Plains ($550). She remains responsible for paying her stepfather, Harold Martin, $8,729.00, the balance due him on a $30,-000.00 loan she and Philip used to buy their house. Per the divorce decree, she sold the

house and remitted the entire sales proceeds, $21,271.00, to Harold Martin.

Philip Johnson testified that he is employed as a quality assurance inspector at Keystone Railway Equipment Co., earning $9.61 per hour. He expects to receive an annual raise in May. His bankruptcy schedules list gross monthly wages of $1,515.00, estimated monthly overtime of zero, and net monthly income of $1,180.00 after taxes and insurance. His 1995 tax return claims income of $18,782.78. He testified that his income has increased since he filled out his schedules; his net monthly income is now $1,310.00 per month after deductions, and $1,210.00 per month after deducting his $100 per month contribution to his retirement account. His weekly wage statements show he has been earning overtime pay, ranging from two hours to eight hours per pay period. However, he is not always able to work overtime and has no right to extra hours.

Philip Johnson owns no real estate, and lives in an 8' × 60' mobile home that is at least thirty years old. He testified that he pays his landlords at least $330 per month, but the amount varies, depending on the monthly utility expense. The higher the utility bill, the higher the monthly rent. However, his landlords allow him to pay part of his rent by labor; the landlords pay him $5 per hour. His bankruptcy schedules list monthly rent of $330.00 and monthly utilities of approximately $200.00. Six months of checks from Philip Johnson to the landlords show payments ranging from $330.00 to $367.11 from October, 1995 to March, 1996.

His bankruptcy schedules list total monthly expenses of $1065.00, as follows:

| | |
|---|---:|
| Rent/home mortgage payments | $ 330.00 |
| Utilities: | |
|     Electricity and heating fuel | $ 125.00 |
|     Water and sewer | $ 15.00 |
|     Telephone | $ 25.00 |
|     Garbage | $ 20.00 |
|     Security | $ 0.00 |
|     Cable | $ 35.00 |
| Home maintenance (repairs and upkeep) | $ 0.00 |
| Food | $ 225.00 |
| Clothing | $ 35.00 |
| Laundry and dry cleaning | $ 25.00 |
| Medical and dental expenses | $ 25.00 |
| Transportation (not including car payments) | $ 50.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 0.00 |
| Charitable contributions | $ 0.00 |
| Insurance: (not deducted from wages or included in home mortgage payments.) | |
|     Homeowner's or renter's | $ 15.00 |
|     Life | $ 55.00 |
|     Health | $ 0.00 |
|     Auto | $ 30.00 |
| Taxes: personal property | $ 10.00 |
| Installment payments: divorce attorney | $ 45.00 |
| Alimony, maintenance, and support paid to others | $ 0.00 |
| Payments for support of additional dependents not living at your home | $ 0.00 |
| Regular expenses from operation of business, profession, or farm | $ 0.00 |
| TOTAL MONTHLY EXPENSES | $1,065.00 |

Philip Johnson testified that he actually spends $250 per month for food, $50 per month for medical expenses, and $150 per month for transportation. He also testified that he has dropped his renters and life insurance. Thus, he claims actual monthly expenses of $1,145.00. Deducting these expenses from his net monthly income of $1,310.00, leaves him with $165.00 per month in disposable income, for additional monthly expenses: $60 for mental health care; $50 for dental care; and $114 to Great Plains

pursuant to his obligation in the divorce decree. He is paying his debt to Great Plains pursuant to his renegotiation of the debt postpetition. He claims that the monthly interest alone on the Visa and MasterCard debt at issue in this case is $147.

At the time of trial and before paying rent, Philip Johnson had $200 in his savings account and $600 in his checking account. He owns a 1978 Ford van in need of a motor overhaul, new tires and a new suspension. The van has over 100,000 miles on it. He testified that he also has four collective Gnome figurines that he values at $200 or less, and a model airplane collection with a retail value of $1800, that he would be willing to sell for $600. His bankruptcy schedules list "remote control aircraft" worth $100. He testified that he has paid other expenses from the cash value (less than $1,000) of his whole life insurance policy, and a loan from his retirement account. He testified that he was unable to get a loan on his retirement account until two weeks before the trial, because he already had a loan on it. Neither his retirement account statement nor his bankruptcy schedules reflect such a loan.

His canceled checks show that since he filed bankruptcy, he has spent over $300 for a bike, which he claims was necessary since his van is in poor condition. He wrote a $197 check to the Kansas City Chiefs in December, 1995, and a $152 check to the Chiefs in February, 1996. He testified that these were payments for season or playoff tickets, but that he is selling the tickets and the buyer will make the payments.

He further testified that he turned over his guitar and amplifier to a consignment shop. The consignment shop sold the amplifier for $267, but has not yet sold the guitar.

### CONCLUSIONS OF LAW

■ Laurie Johnson seeks to have Philip Johnson's obligations arising from the Divorce Decree declared nondischargeable pursuant to 11 U.S.C. § 523(a)(15). Section 523(a)(15) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). The plaintiff has the initial burden of establishing that the debt at issue is within the purview of § 523(a)(15). In this case, that burden is easily satisfied because Philip Johnson does not dispute that the debt comes within the meaning of § 523(a)(15), but argues that the exceptions in § 523(a)(15)(A) and (B) apply. Either one of the exceptions will render the debt nondischargeable.

■ The majority of courts have held that the debtor has the burden of proof as to subsections (A) and (B). *See In re Jodoin,* 209 B.R. 132, 139 (9th Cir. BAP 1997) (citations omitted). However, this Court finds that once the debtor has shown the benefit of a discharge under § 523(a)(15)(B), the nondebtor spouse has the burden of production with regard to the detrimental consequences to the nondebtor spouse. *See In re Hesson,* 190 B.R. 229, 239 (Bankr.D.Md.1995). The nondebtor spouse knows his or her current financial condition and has access to the evidence required for this portion of the balancing test. The ultimate burden, however, lies with the debtor because § 523(a)(15)(B), like subsection (A), is an affirmative defense.

*See In re Hill,* 184 B.R. 750, 754 (Bankr. N.D.Ill.1995).

■ This Court agrees with the courts that find that the appropriate time to apply the ability to pay and detriment tests is at the time of trial and not at the time of the filing of the petition. *See In re Jodoin,* 209 B.R. 132, 142 (9th Cir. BAP 1997). The language in § 523(a)(15)(A) and (B) is stated in the present tense. The court, in *In re Hesson,* 190 B.R. 229, 238 (Bankr.D.Md. 1995), noted that this is not a historical search, but as with a student loan inquiry under § 523(a)(8), is an examination of current circumstances. Post-filing events, like either party sustaining a disabling injury or winning the lottery, could easily affect either the debtor's ability to pay the debt or the balance between the debtor's benefit from discharge and the detrimental consequences of discharge to the former spouse. *Id.*

■ Section 523(a)(15)(A) requires a showing by the debtor that he or she does not have the ability to pay the debt in issue. In *In re Hill,* the court utilized the disposable income test of 11 U.S.C. § 1325(b)(2) to aid the court in determining whether the debtor had the ability to pay. *See In re Hill,* 184 B.R. 750, 755 (Bankr.N.D.Ill.1995). This Court likewise finds it appropriate to utilize this standard for purposes of § 523(a)(15)(A). *See also In re Taylor,* 191 B.R. 760, 765–66 (Bankr.N.D.Ill.1996), *aff'd* 199 B.R. 37 (N.D.Ill.1996) (noting that the statutory language of § 523(a)(15)(A) is identical to that contained in § 1325(b)(2)(A) and (B), and that most Chapter 7 debtors do not have the available cash on hand to presently satisfy such claims in one lump sum and at the same time meet their current living expenses).

■ The "ability to pay" test focuses on whether the debtor's budgeted expenses are reasonably necessary. *In re Hill,* 184 B.R. at 755. In interpreting "reasonably necessary," many courts are reluctant to impose their own values on the debtor, and exclude only luxury items and obvious indulgences. *Id.* (citation omitted). Other courts only allow those expenses for basic needs not related to the debtor's former status in society or accustomed lifestyle. *Id.* (citations omitted).

■ Philip Johnson has met his burden of proving that he does not have the ability to pay the debts in issue. His net monthly income is $1,310.00. He claims expenses of $1,255.00 (including the mental health and dental expenses), plus $114 for the renegotiated debt to Great Plains. Interest payments alone on the Visa and MasterCard debt would add at least an additional $147 per month. If his claimed expenses are accepted as reasonable, he cannot pay the debts at issue in addition to the debt to Great Plains.

The Court finds that a review of Philip Johnson's claimed expenses reveals no unreasonable expenses in amount or type. His living expenses are minimal, his accommodations meager. Thus, he does not have the ability to pay the Visa and MasterCard debts in issue. His disposable income of $165 per month is insufficient to pay for healthcare and the VISA and MasterCard debt as well as the $114 per month marital debt to Great Plains.

Although the debtor's showing of an inability to pay under § 523(a)(15)(A) is sufficient to discharge the debt, the Court will also address the merits of the § 523(a)(15)(B) defense.

Courts examining § 523(a)(15)(B) have weighed several factors and applied a totality of the circumstances test. Those factors include: (1) the income and expenses of both parties; (2) whether the nondebtor spouse is jointly liable on the debts; (3) the number of dependents; (4) the nature of the debt; (5) the reaffirmation of any debts; and (6) the nondebtor spouse's ability to pay. *See In re Hill,* 184 B.R. at 756. Several courts have found that equity weighs against discharge where the debtor has the ability to pay. *In re Taylor,* 191 B.R. at 766 (citations omitted).

■ Philip Johnson has shown that he will benefit greatly by discharging the debts in issue. He is living a meager existence, is maximizing income by working overtime when available and by working for his landlords to defray part of his rent/utility expense. He is stretched to the limit and would benefit greatly by not having to spend the rest of his life trying to pay VISA and

MasterCard, when he is already voluntarily paying another marital debt, Great Plains, despite his tenuous financial situation.

Next, the Court must assess the detrimental consequences to the nondebtor spouse. Laurie Johnson will be saddled with VISA and MasterCard bills, despite having sold her house and car and using her retirement account to pay her share of marital debts. She acted responsibly, abided by the terms of the divorce decree and is without any assets other than a car. On the other hand, she failed in her burden of production of current financial information. She testified that she earns $800 per month working for her new husband's business; there is no evidence regarding her current expenses. She may have disposable income. Although the ultimate burden of proof regarding the balancing test is on the debtor, when the nondebtor spouse fails to produce evidence of a current financial detriment, and the debtor produces evidence of an immediate financial benefit, the balance obviously tips in favor of the debtor and in favor of discharge.

■ Another issue is whether part of the debt can be excepted from discharge. Most courts follow the "all or nothing" approach. *See In re Taylor,* 191 B.R. at 766; *In re Hill,* 184 B.R. at 755 n. 15 (noting that the phrase "to the extent that" does not appear in § 523(a)(15), which could indicate an intent to limit the courts to an "all or nothing" result). This Court agrees with the all or nothing approach. In this case, the parties focused on the dischargeability of the Visa and MasterCard debt, although Philip Johnson's debt to Great Plains is also an obligation resulting from the divorce decree. However, Philip Johnson renegotiated the loan to Great Plains postpetition, and with that liability is clearly unable to pay Visa and MasterCard.

**IT IS THEREFORE ORDERED BY THE COURT** that Philip Johnson's debts to Visa and MasterCard shall be discharged pursuant to 11 U.S.C. § 523(a)(15)(A) and (B).

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.