**In re Joseph Jasper COSTANZA, Debtor.**

**Bankruptcy No. 97–40919.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 25, 1997.

589

Steven R. Rebein, Lenexa, KS, for Debtor.

Do L. Cowan, Missouri Department of Child Support Enforcement, Independence, MO, for Claimant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Joseph Costanza filed this Chapter 13 bankruptcy case on March 13, 1997. He listed a claim to his former spouse, Jan Costanza, in the amount of $10,500 as a general unsecured claim. Ms. Costanza then filed a Proof of Claim on May 6, 1997, claiming the debt is a priority secured claim. Mr. Costanza objected to the Proof of Claim and the characterization of the debt as a priority secured claim. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find the claim to be a general unsecured claim, therefore, Mr. Costanza‘a objection is sustained.

### FACTUAL BACKGROUND

Joseph and Jan Costanza were married on August 4, 1979. They have one child born on September 17, 1981. The parties were divorced on November 12, 1996. At the time of the marriage, Ms. Costanza owned a home currently valued at $53,900. At the time of the divorce the home was encumbered by two mortgages. Ms. Costanza was obligated on the first mortgage in the amount of $18,000. Both parties were obligated on a second mortgage in the amount of $21,000. Mr. Costanza was not represented by an attorney at the time of the divorce, nor did he attend the hearing when the Judgment and Decree of Dissolution of Marriage (the Decree) was entered.[1] In the Decree the Circuit Court of Jackson County, Missouri awarded Ms. Costanza sole custody of the child and child support payments in the amount of $469 a month. It also awarded Ms. Costanza the home and the first mortgage obligation. Mr. Costanza was ordered to sign over any interest he had in the home by Quit–Claim Deed. It further ordered that each party would be responsible for one–half of the obligation represented by the second mortgage. The Decree required Mr. Costanza to pay directly to Ms. Costanza the sum of $210.00 a month for a total of 50 months with no interest.[2] He was to continue making these payments whether Ms. Costanza sold or refinanced the home. The payments were to begin on December 1, 1996. Mr. Costanza has not made any payments. He filed this Chapter 13 bankruptcy petition on March 13, 1997, when another creditor attempted to garnish his wages. His Chapter 13 Plan and Plan Summary provide that he will pay $80.00 a week to the Chapter 13 trustee over a term of 50 months. The plan payment will be used to satisfy the remainder of his attorney's fees, a priority claim of the Internal Revenue Service in the amount of $2,400, and a secured debt in the amount of $11,000. It also provides for a zero percent payout to the general unsecured creditors.

This treatment of the obligation to Ms. Costanza in the amount of $10,500 is at issue here. Mr. Costanza claims the obligation is part of the property settlement, therefore, it is a general unsecured claim. Ms. Costanza claims the obligation is in the nature of support, therefore, it is a priority claim, pursuant to 11 U.S.C. 507(7), which must be satisfied over the course of the Chapter 13 plan, pursuant to 11 U.S.C. § 1322(a)(2).

### DISCUSSION

While this motion is styled as an objection to a claim, it is really the priority of the claim which is at issue. Mr. Costanza does not deny that he is obligated to Ms. Costanza in the amount of $10,500. If this is a general

1. Deb. Ex. # 1.

2. *Id.* at pg. 6.

unsecured claim as Mr. Costanza claims, Ms. Costanza will receive no payments on the debt because the Chapter 13 plan as proposed pays none of the general unsecured claims. If the debt is a priority claim, however, section 1322(a)(2) of the Bankruptcy Code (the Code) requires that all priority claims be paid in full over the course of the plan before a Chapter 13 plan can be confirmed:

(a) The plan shall—

. . . . . .

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim.[3]

A claim that arises from a dissolution decree, and that is intended to be for maintenance or support, is a priority claim:

(a) The following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed claims for debts to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce degree, ... determination made in accordance with State or territorial law by a governmental unit, ... but not to the extent that such debt—

. . . . .

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.[4]

**3.** 11 U.S.C. § 1322(a)(2).

**4.** 11 U.S.C. § 507(a)(7).

**5.** *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

**6.** 11 U.S.C. § 523(a)(5)(B).

**7.** *Williams v. Williams (In re Williams),* 703 F.2d 1055, 1057 (8th Cir.1983).

**8.** *Peterson v. Peterson (In re Peterson),* 133 B.R. 508, 512 (Bankr.W.D.Mo.1991).

The language in section 507(a)(7) is verbatim the language in section 523(a)(5) of the Code. Section 523(a)(5) concerns debts that are excepted from discharge in bankruptcy cases, but the analysis there is useful in determining if an obligation that arose from a dissolution decree is "actually in the nature of alimony, maintenance or support." The Court must, therefore, determine whether the debt would be nondischargeable pursuant to 11 U.S.C. section 523(a)(5)(B) in order to determine the priority of the debt.

The party objecting to the dischargeability of certain debts under section 523(a) bears the burden of proving each element of the objection by a preponderance of the evidence.[5] Section 523(a)(5) excepts from discharge a debt in the nature of maintenance or support.[6] In the Eighth Circuit, the function the parties, or the Court as the case may be, intended the debt to serve at the time of the dissolution determines whether a debt is in the nature of maintenance or support.[7] In determining the function the parties, or the State Court, intended the debt to serve, the court should first look to the language of the agreement itself.[8] In this case the parties did not reach a Property Settlement Agreement. Instead, the State Court entered a Judgement and Decree of Dissolution of Marriage.[9] The debt at issue is not clearly labeled in the Decree as either support or as part of the property settlement. The Decree provides:

That both Petitioner and Respondent are capable of earning sufficient income to provide for their own support and neither party is entitled to an award of periodic maintenance[.] [10]

As to the debt in question, the Decree provides:

**9.** I note that Mr. Costanza did not attend the hearing when the Decree was entered, nor was he represented by an attorney at the time of the dissolution. Deb. Ex. # 1. In *Drennan v. Drennan (In re Drennan),* 161 B.R. 661, 664 n. 2 (Bankr.E.D.Ark.1993), the Court states that the language of the agreement deserves little weight when one party's attorney drafted the agreement and the other party was not represented by an attorney.

**10.** Deb. Ex. # 1, pg. 2.

That since the date of the marriage, the parties have acquired a second mortgage on said residence to Household Finance with an approximate present balance of $21,000.00 and said indebtedness was incurred for the purchase of certain marital property and to pay certain marital debts[.] [11]

The Decree then treats that debt as follows:

Petitioner [Ms. Costanza] and Respondent [Mr. Costanza] shall each be responsible for one–half of the indebtedness as owed to Household Finance Corporation which is in the total amount of approximately $21,000.00. Petitioner shall be responsible for one–half of this indebtedness or $10,500. Respondent shall pay $10,500.00 to Petitioner as his share of said indebtedness. [12]

There is nothing in the language of the Decree to indicate that this obligation was intended to be in the nature of maintenance or support. However, since the language of the agreement is not determinative, [13] I look beyond the Decree to examine the true nature of the obligation awarded to Mr. Costanza. [14] In order to determine the true nature of the obligation, the crucial question to be considered by the court is what function the parties, or the State Court intended the agreement to serve when at the time of the dissolution. [15]

■ The standard used to determine whether an award is "in the nature of maintenance or support" entails a three part analysis. [16] The three prongs of this test include: "(1) [an] examination of the marital settlement agreement in light of the surrounding circumstances; (2) consolidation of financial circumstances at the time of the award; and (3) consideration of the function to be served by imposing the obligation at the time of the award." [17]

■ In the Costanza case, the State Court divided the property. Mr. Costanza received property worth approximately $12,000 while Ms. Costanza received property worth approximately $17,500. She received all of the equity in the home, valued at $53,900, and she is responsible for the first mortgage of $18,000. The State Court divided the second mortgage with each spouse responsible for the sum of $10,500. Included in the sum of $17,500 that Ms. Costanza received is the equity in the home as well as most of the furnishings in the home. I note that the furnishings retained by Ms. Costanza appear to be valued at their fair market value. For example, she received the following: a washer and dryer valued at $200.00; a refrigerator valued at $200.00; a sofa and love seat valued at $100.00; a living room chair valued at $50.00; 2 end tables valued at $20.00; a china cabinet valued at $200.00; an oak desk valued at $200.00; a dining room table with chairs valued at $50.00; a bookcase valued at $10.00; towels and bed linens valued at $10.00; dinnerware and silverware valued at $20.00; kitchen appliances valued at $30.00; a bedroom set valued at $100.00; a 25 inch television valued at $150.00; a lawnmower valued at $50.00; and miscellaneous yard tools and hoses valued at $50.00. On the other hand, the property retained by Mr. Costanza appears to be valued at its replacement value. For example, he received the following: miscellaneous tools valued at $2,000; stereo equipment and speakers valued at $4,000: miscellaneous CD's valued at $2,000; a 35 mm camera with lenses valued at $150.00; a satellite dish valued at $700.00; and a 35 inch color television valued at $1,200.

While the division of property is not totally equal, it favors Ms. Costanza. In addition,

11. *Id.* at pg. 3

12. *Id.* at pg 5–6.

13. *Williams v. Williams (In re Williams )*, 703 F.2d 1055, 1057 (8th Cir.1983).

14. *Id.*

15. *Boyle v. Donovan*, 724 F.2d 681, 683 (8th Cir.1984); *Rice v. Rice (In re Rice )*, 94 B.R. 617, 619 (Bankr.W.D.Mo.1988).

16. *Gianakas v. Gianakas (In re Gianakas )*, 917 F.2d 759, 762 (3rd Cir.1990); *Montgomery v. Montgomery (In re Montgomery )*, 128 B.R. 780, 783 (Bankr.W.D.Mo.1991); *Schurman v. Schurman (In re Schurman )*, 130 B.R. 538, 539 (Bankr.W.D.Mo.1991).

17. *Montgomery*, 128 B.R. at 783.

she is allowed to receive the federal and state income tax exemptions on their son for all future years despite the fact that Mr. Costanza is ordered to pay $469.00 a month in child support.

There is no evidence to indicate that the award to Mr. Costanza of one half of the second mortgage on the home was anything other than a division of marital property.[18] Ms. Costanza has a job, and she was not awarded any direct maintenance. She retains all of the equity in the home. Mr. Costanza's obligation to his former wife is not designated for ongoing living expenses, rather it is an obligation for which they are both responsible. For all of the above reasons, I find that the debt is a division of property. As such, it is a dischargeable debt that is not entitled to priority pursuant to 11 U.S.C. § 507(a)(7). Mr. Costanza's objection to the Proof of Claim should, therefore, be sustained. I note, however, that Mr. Costanza's plan, as proposed, has not been confirmed. There are other priority claims, to which he as not objected, that are not included in the plan. He must, therefore, amend his plan to provide for those claims before this Court will consider whether the plan is feasible.

An Order in Accordance with this Memorandum opinion will be entered this date.

---

**18.** I note that Mr. Costanza's ongoing obligation to pay child support is nondischargeable, and that this Order does not affect that obligation.