In re Ellis Elliott CAMERON, Jr., Debtor.

Rebecca S. Cameron, Appellant,

v.

Ellis Elliott Cameron, Jr., Appellee.

No. Civ.A. 98–D–1190–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 18, 1999.

M. Joanne Camp, Opelika, AL, for debtor.

Charles M. Ingrum, Opelika, AL, for appellant.

Cecil M. Tipton, Jr., Opelika, AL, trustee.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This case is before the court on appeal from the United States Bankruptcy Court for the Middle District of Alabama ("Bankruptcy Court"). Rebecca S. Cameron ("Ms. Cameron") appeals the August 25, 1998 final judgment of the Bankruptcy Court in which the Bankruptcy Court found that a judgment issued under a divorce decree requiring Ellis Elliott Cameron, Jr. ("Debtor") to pay an outstanding debt to General Motors Acceptance Corporation ("GMAC") was not excepted from discharge under 11 U.S.C. § 523(a)(15). Ms. Cameron filed her appellate brief on November 5, 1998. On May 20, 1999, Debtor filed his response brief. For the reasons that follow, the final judgment of the Bankruptcy Court is reversed and remanded.

## JURISDICTION

The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).[1]

## STATEMENT OF THE CASE

On March 22, 1995, the Circuit Court of Russell County, Alabama, issued a divorce decree dissolving the marriage of Debtor and Ms. Cameron. The divorce decree incorporated a property settlement agree-ment and ordered Debtor to pay child support of $600 per month to Ms. Cameron. (*See* Trial Tr. at 9–10, 33–34; Divorce Decree ¶ 3.)

Under the property settlement agreement, Debtor agreed to assume and pay an outstanding debt to GMAC.[2] (*See* Settlement Agreement ¶ 8(A)(1).) This debt resulted from the Parties' purchase of a 1993 Oldsmobile Achieva during their marriage. (*See* Trial Tr. at 10, 20–21.) The property settlement agreement awarded the Achieva to Ms. Cameron. (*See* Settlement Agreement ¶ 7(A)(2).)

Initially, Debtor complied with the property settlement agreement by making some of the payments on the outstanding debt to GMAC. (*See* Trial Tr. at 14–15, 34–36). However, Debtor eventually ceased making payments and GMAC repossessed the Achieva from Ms. Cameron. (*See id.* at 15–17, 32.) Ms. Cameron later recovered the Achieva from GMAC by assuming and temporarily increasing payments on the outstanding debt. (*See id.* at 15–16.) She eventually paid the debt, as well as attorneys' fees, repossession fees, and other costs resulting from Debtor's failure to fulfill his obligations under the property settlement agreement. (*See id.* at 10, 15–18, 32.) In all, Ms. Cameron paid "[a] little over twenty-eight thousand dollars" to GMAC. (*Id.* at 10.)

In late 1996, Debtor commenced a proceeding in the Circuit Court of Russell County, Alabama, to reduce the amount of his child support payments to Ms. Cameron. (*See id.* at 11–13, 34–35, 47; Compl. to Determine Dischargeability of Debt, filed in the Circuit Court of Russell County, Alabama ("Divorce Compl."), Ex. B.) During this proceeding, Ms. Cameron asserted a claim against Debtor for reimbursement on the debt to GMAC which she had assumed and paid for him. (*See* Trial Tr. at 23–24; Divorce Compl., Ex. B.) On Sep-

---

1. Title 28 U.S.C.A. § 158(a) provides, in part, that district courts shall have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.

2. The record does not indicate the balance due on the debt to GMAC on the date that the divorce decree was issued.

tember 11, 1997, the circuit court denied Debtor's request to reduce the amount of his child support payments and entered a judgment against Debtor in the amount of $28,500 for his "failure to pay the debt owed to GMAC." [3] (Divorce Compl., Ex. B.)

Several months later, on November 3, 1997, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Bankruptcy Court discharged Debtor's obligation to pay the $28,500 state court judgment.

Soon thereafter, on December 17, 1997, Ms. Cameron commenced an adversary proceeding against Debtor by filing a complaint to determine dischargeability of debt in the Bankruptcy Court. In her complaint, Ms. Cameron alleged that the $28,500 judgment against Debtor is exempt from discharge under 11 U.S.C. § 523(a)(15). The Bankruptcy Court held a trial on July 14, 1998, and, thereafter, took the matter under advisement. On August 25, 1998, the Bankruptcy Court issued a final judgment in which it found that although Debtor's obligation under the judgment is the type of debt covered by § 523(a)(15), it is not excepted from discharge. The Bankruptcy Court reasoned that Debtor did not have the ability to pay the judgment and that the judgment is therefore dischargeable under § 523(a)(15)(A). Ms. Cameron now appeals the Bankruptcy Court's decision.

## ISSUE ON APPEAL

The court must address the following issue on appeal: Did the Bankruptcy Court err in finding that the $28,500 judgment against Debtor is not excepted from discharge under 11 U.S.C.A. § 523(a)(15)(A).

**3.** The circuit court also ordered Debtor to pay medical insurance premiums of $55 per month for the parties' minor child beginning September 1, 1997. (Divorce Compl., Ex. B.)

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's factual findings under a clearly erroneous standard. *See* FED. R.BANKR.P. 8013; *Club Assoc. v. Consolidated Capital Realty Investors (In re Club Assoc.)*, 951 F.2d 1223, 1228 (11th Cir. 1992). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). In contrast, the district court reviews *de novo* the bankruptcy court's legal conclusions. *See Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 593 (11th Cir.1990). The district court must independently examine the law and draw its own conclusions after applying the law to the facts. *See Prestwood v. United States (In re Prestwood)*, 185 B.R. 358, 360 (M.D.Ala.1995). "On appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." FED.R.BANKR.P. 8013.

## DISCUSSION

Ms. Cameron contends that the Bankruptcy Court erred in finding that Debtor has only $102 per month in disposable income and, therefore, does not have the ability to pay the $28,500 judgment. (*See* Br. of Appellant at 11–12.) She argues that Debtor does have the ability to pay the judgment because the evidence presented to the Bankruptcy Court shows that Debtor has $386 per month to pay against the judgment—$186 in disposable income and $200 which he is currently spending to pay an unsecured debt. (*See id.*) In the alternative, Ms. Cameron contends that the Bankruptcy Court erred by failing to consider that Debtor can pay

Therefore, the circuit court effectively increased Debtor's child support payment to $655 per month.

part of the judgment and that the judgment is, therefore, only partially dischargeable. (*See id.* at 12.) Ms. Cameron asks the court to reverse and remand this matter under either of these two theories. (*See id.* at 15.) In reply, Debtor contends that the Bankruptcy Court did not err and that its final judgment should be affirmed. (*See* Br. of Appellee at 10–11.)

The Bankruptcy Code generally discharges a debtor from all debts that arose before he or she filed a petition for bankruptcy. *See* 11 U.S.C. § 727. However, § 523(a) of the Bankruptcy Code enumerates eighteen categories of debts that are excepted from a debtor's discharge, i.e., that are not dischargeable. *See* 11 U.S.C. § 523(a); *In re Crosswhite*, 148 F.3d 879, 881 (7th Cir.1998). Two of the eighteen categories listed in § 523(a) pertain to marital debts. Subsection (5) generally exempts from discharge any debt for alimony, maintenance, or support stemming from a separation agreement, divorce decree, or settlement agreement. *See* 11 U.S.C.A. § 523(a)(5). Subsection (15) exempts from discharge any debt

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Subsection (15) of § 523(a) is part of the Bankruptcy Reform Act of 1994 and was added to the Bankruptcy Code to expand § 523(a)(5)'s exception to the discharge of marital debts. *See Crosswhite*, 148 F.3d at 882. Under § 523(a)(15), an individual debtor is not discharged from any marital debt that is in the nature of alimony, maintenance, or support unless either the debtor does not have the ability to pay the debt or the benefit to the debtor in discharging the debt outweighs the detrimental consequence to the debtor's former spouse or child. *See* 11 U.S.C. § 523(a)(15); *Crosswhite*, 148 F.3d at 883; *Beasley v. Adams* (*In re Adams*), 200 B.R. 630, 633 (N.D.Ill. 1996).

A majority of bankruptcy courts, including two circuit courts that have addressed the issue, have concluded that § 523(a)(15) sets up a shifting burden of proof: the non-debtor spouse bears the initial burden of showing that § 523(a)(15) is applicable to the debt in question, whereupon the burden shifts to the debtor to prove that he falls within either of the two exceptions to nondischargeability. *See, e.g., Gamble v. Gamble* (*In re Gamble*), 143 F.3d 223, 226 (5th Cir.1998); *Crosswhite*, 148 F.3d at 884–85; *Sparagna v. Metzger* (*In re Metzger*), 232 B.R. 658, 663 (Bankr.E.D.Va. 1999); *Smith v. Smith* (*In re Smith*), 218 B.R. 254, 258 (Bankr.S.D.Ga.1997); *McGinnis v. McGinnis* (*In re McGinnis*), 194 B.R. 917, 920 (Bankr.N.D.Ala.1996); *Humiston v. Huddelston* (*In re Huddelston*), 194 B.R. 681, 685–86 (Bankr.N.D.Ga. 1996).

The Bankruptcy Court found, and the Parties do not dispute, that the $28,500 judgment against Debtor was entered pursuant to the property settlement agreement that was incorporated into the parties' divorce decree and that the judgment is not in the nature of alimony, maintenance, or support. (*See* Final J. at 3–4.) Similarly, neither Party contends that the judgment is the kind of debt described in § 523(a)(5). Consequently, the Parties

agree that Ms. Cameron has met her burden of proof under § 523(a)(15). However, the Parties dispute whether Debtor has met his burden of proving the first exception to § 523(a)(15)—that Debtor did not have the ability to pay the judgment.

In order to resolve disputes under the ability to pay exception to § 523(a)(15), most courts rely on the "disposable income test" of § 1325(b)(2) of the Bankruptcy Code[4] because that section's language essentially mirrors the language of § 523(a)(15)(A). *See, e.g., Adams,* 200 B.R. at 634; *Henrie v. Henrie (In re Henrie )*, 235 B.R. 113, 120 (Bankr.M.D.Fla. 1999); *Metzger,* 232 B.R. at 663–64; *Bushee v. Bushee (In re Bushee)*, 211 B.R. 114, 114 (Bankr.D.R.I.1997); *Willey v. Willey (In re Willey)*, 198 B.R. 1007, 1014 (Bkrtcy.S.D.Fla.1996). Under the disposable income test, the bankruptcy court is to subtract the debtor's budgeted expenses, assuming they are reasonably necessary, from Debtor's income and determine if there is any money left. *See Metzger,* 232 B.R. at 664; *Soforenko v. Soforenko (In re Soforenko)*, 203 B.R. 853, 864 (Bankr. D.Mass.1997); *Smith,* 218 B.R. at 259; *Willey,* 198 B.R. at 1014. For purposes of the disposable income test, a debtor's expenses and income include those of his or her new spouse, if applicable. *See Gamble,* 143 F.3d at 226, *In re Leonard,* 231 B.R. 884, 888 (E.D.Pa.1999); *Morris v. Morris (In re Morris)*, 197 B.R. 236, 243–44 (Bankr.N.D.W.Va.1996).

The emphasis of the court's evaluation under the disposable income test is whether the debtor's budgeted expenses are reasonably necessary. *See Leonard,* 231 B.R. at 888; *Tersen v. Tersen (In re Tersen)*, 234 B.R. 189, 193 (Bankr.M.D.Fla. 1999); *Smith,* 218 B.R. at 259; *Willey,* 198 B.R. at 1014. In determining what is reasonably necessary, most courts have adopted one of two standards. Under the first standard, the court will not impose its own values on the debtor and will exclude only luxury items and obvious indulgences. Under the second standard, the court will allow only those expenses that are sufficient to accommodate the debtor's basic needs, regardless of his former lifestyle and status in society. *See Leonard,* 231 B.R. at 888; *Dunn v. Dunn (In re Dunn)*, 225 B.R. 393, 400 (Bankr.S.D.Ohio 1998); *Johnson v. Johnson (In re Johnson)*, 212 B.R. 662, 667 (Bankr.D.Kan.1997); *Willey,* 198 B.R. at 1014. In light of these principles, the court will now examine how the Bankruptcy Court determined that Debtor did not have the ability to pay the $28,500 judgment and Ms. Cameron's objections thereto.

The Bankruptcy Court found that Debtor's "household income [is] approximately $2,500.00 per month, which is not likely to increase and will remain about the same for the next three years." (Final J. at 9.) The Bankruptcy Court reached this $2,500 figure by adding Debtor's 1997 net monthly income of $1,083.33, which he listed in his Schedule I, and the $1,473.33 average monthly income of Debtor's new wife.[5] (*See id.* at 8–9.)

---

4. Section § 1325(b)(2) defines "disposable income" as

 income which is received by the debtor and which is not reasonably necessary to be expended—
 (A) for the maintenance or support of the debtor or a dependent of the debtor, ... and
 (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
 11 U.S.C. § 1325(b)(2).

5. The actual sum of these two incomes is $2,556.66. Debtor did not list the income of his new wife in his bankruptcy schedules. (*See* Final J. at 9 n. 13.) The record does not indicate how the Bankruptcy Court determined that the monthly income of Debtor's new wife is $1,473.33. However, the Bankruptcy Court noted that Debtor's new wife had become unemployed a few days before trial, but assumed that she would be able to attain other, similar employment. The Bankruptcy Court, thus, projected her income accordingly. (*See id.* at 8 n. 11.)

In calculating Debtor's reasonably necessary expenses, the Bankruptcy Court based its finding on "(1) published National Standards for food, clothing and like items based on family size and income level; and (2) the lower of (a) published Local Standards for housing, utilities, and transportation or (b) the amount actually spent for these items." (*Id.* at 9.) The Bankruptcy Court borrowed this standard from the Collection Financial Standards, published and used by the Internal Revenue Service "to help determine a taxpayer's ability to pay a delinquent tax liability." (*Id.* at 10 n. 15.) Based on the National Standards for a family of two with a monthly gross income of between $2,500 and $3,329, the Bankruptcy Court allowed Debtor $744 per month for food, clothing, and related items. (*See id.* at 10.) The Bankruptcy Court itemized those expenses as follows:

| | | |
|---|---|---|
| Food | $ | 408.00 |
| Housekeeping supplies | | 44.00 |
| Apparel and services | | 123.00 |
| Personal care products and services | | 44.00 |
| Miscellaneous | | 125.00 |
| Total | $ | 744.00 |

(*See id.* at 10 n. 16.)

Next, the Bankruptcy Court allowed Debtor $311.50 per month for housing and utilities, which is the amount that he listed on his Schedule J.[6] Finally, the Bankruptcy Court allowed Debtor $687.59 per month for transportation. It based this figure on a combination of the Local Standards and Debtor's actual listed transportation expenses. The Local Standards divide transportation expenses into operating costs and ownership costs. (*See id.* at 10 n. 18.) Although Debtor listed his operating costs at $360 per month—$260 for transportation and $100 for insurance—the Bankruptcy Court allowed Debtor only $279 per month for operating costs, as that is the amount allowed by the Local Standard's for two cars. (*See id.*) In contrast, the Bankruptcy Court allowed Debtor the $408.59

per month that he listed for ownership costs—$200 for his vehicle and $208.59 for his new wife's vehicle—because that figure is less than the amount allowed by the Local Standard. (*See id.*) In total, the Bankruptcy Court allowed Debtor $1,743.09 per month for living expenses. (*See id.* at 10–11.)

Next, the Bankruptcy Court subtracted Debtor's monthly "expenses" of $1,743.09 and monthly child support payment of $655 from his approximate monthly income of $2,500 to find that Debtor had disposable monthly income of "about $102." (*Id.* at 11.) The Bankruptcy Court concluded that $102 per month is insufficient to pay the $28,500 "judgment plus interest in the reasonable period of three to five years" and, therefore, Debtor does not have the ability to pay the judgment. (*Id.* at 11–12.)

Ms. Cameron's brief advances three arguments as to why the Bankruptcy Court's finding that Debtor does not have the ability to pay the judgment is clearly erroneous. First, Ms. Cameron contends that, in calculating Debtor's expenses, the Bankruptcy Court improperly relied, at least in part, on the Collection Financial Standards, rather than Debtor's actual expenses, as listed in his petition. (*See* Br. of Appellant at 4–5.) Ms. Cameron argues that based on his actual expenses, Debtor has monthly disposable income of $186. (*See id.*)

Second, she argues that the Bankruptcy Court erred by failing to give the $28,500 judgment priority over Debtor's unsecured automobile debt to his mother, against which he pays $200 per month and which the Bankruptcy Court included as one of Debtor's transportation expenses. (*See id.* at 8.) Third, Ms. Cameron contends that the Bankruptcy Court erred in failing to consider granting Debtor only a partial discharge of the judgment. (*See id.* at 9–

---

**6.** The Bankruptcy Court found that Debtor listed $170 for rent and $141.50 for utilities

on his Schedule J. (*See* Final J. at 10 n. 17.)

10.) She argues that if Debtor were required to pay his "actual" disposable income of $186 per month over 60 months, she would receive $11,160 against the $28,500 judgment. (*See id.* at 10.) Furthermore, if Debtor were required to pay $186 per month plus the $200 per month which he is now paying toward the unsecured debt, she would receive $23,160 against the judgment. (*See id.*) The court will now address each of Ms. Cameron's three objections in turn.

In his Schedule J, Debtor listed his monthly expenses as follows:

| Utilities: | Electricity and heating | $ | 65.00 |
| | Water and sewer | | 15.00 |
| | Telephone | | 45.00 |
| | Garbage | | 16.50 |
| Food | | | 400.00 |
| Medical and dental | | | 45.00 |
| Transportation (not including car payments) | | | 260.00 |
| Insurance: | Life | | 81.60 |
| | Health | | 55.00 |
| | Auto | | 100.00 |
| Real estate taxes | | | 52.73 |
| Installment payments: | Wife's car payment | | 208.59 |
| | Rent | | 170.00 |
| Alimony, maintenance, support | | | 656.00 |
| Automobile debt paid to mother | | | 200.00 |
| Total monthly expenses | | $ | 2,370.42 |

(*See* Bankruptcy Pet., Schedule J.)

Nothing in the record indicates that Ms. Cameron objected to Debtor's listed expenses in the Bankruptcy Court. Similarly, the Bankruptcy Court did not state that it found any of Debtor's listed expenses to be unreasonable or otherwise unnecessary. In fact, the Bankruptcy Court did not explain why it applied the Collection Financial Standards, instead of the reasonably necessary standard, as its benchmark for calculating Debtor's disposable income, other than saying that "[c]onsideration of these standards will be helpful in determining the amount needed for a debtor's support and provide a measure of objectivity to the task." (Final J. at 10.) However, "[t]he definition of disposable income contemplates a subjectively calculated figure." *In re Rowley*, 143 B.R. 547, 555 (Bankr.D.S.D.1992). Moreover, this court has not found another case in which a bankruptcy court applied the Collection Financial Standards to determine a debtor's allowed expenses under the disposable income test. Therefore, based on the foregoing, the court finds that the Bankruptcy Court was clearly erroneous in applying the Collection Financial Standards, instead of the well-accepted reasonably necessary standard, in determining Debtor's allowed expenses under the disposable income test. *See Metzger*, 232 B.R. at 664; *Soforenko v. Soforenko* (*In re Soforenko*), 203 B.R. at 864; *Smith*, 218 B.R. at 259; *Willey*, 198 B.R. at 1014.

In applying the reasonably necessary standard, the court finds that none of Debtor's listed expenses stand out as being extravagant or anything other than modest. Particularly remarkable is the fact that Debtor listed $0 under both the "clothing" and "recreation" headings in his Schedule J, thereby implying that no part of his family's $2,370.42 monthly expenditure goes toward either clothing or recreation. (*See* Bankruptcy Pet., Schedule J.) Consequently, the court finds that Debtor's listed expenses are reasonably necessary for his support. Subtracting Debtor's listed monthly expenses of $2,370.42 from

Debtor's monthly household income of $2,556.66,[7] Debtor's monthly disposable income was $186.24 at the time that he filed his petition.

■ However, as both the Bankruptcy Court and Debtor have acknowledged (*see* Final J. at 7; Br. of Appellee at 6), a debtor's ability to pay is to be measured on the date of trial, not on the date that the debtor filed his petition. *See Hastings v. Konick (In re Konick)*, 236 B.R. 524 (1st Cir. BAP 1999); *Jodoin v. Samayoa (In re Jodoin)*, 209 B.R. 132, 142 (9th Cir. BAP 1997); *Henrie*, 235 B.R. at 120; *Shea v. Shea (In re Shea)*, 221 B.R. 491, 499 (Bankr.D.Minn.1998); *Johnson*, 212 B.R. at 667; *but see Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200 (Bankr. S.D.Ohio 1995) (finding that the relevant point of inquiry is the date that the debtor filed his petition in bankruptcy). The text of § 523(a)(15)(A) implies that the date of trial is the proper point at which to measure a debtor's ability to pay. *See Jodoin*, 209 B.R. at 142. In addition, by measuring a debtor's financial condition as of the date of trial the court considers debtor's current financial status and, therefore, is able to most accurately measure debtor's ability to pay. Consequently, the court finds that the Bankruptcy Court was clearly erroneous in measuring Debtor's ability to pay as of the date that he filed his petition.

The Bankruptcy Court determined Debtor's household income by adding Debtor's income as it is listed on his Schedule D and his new wife's projected income. At trial, however, Debtor testified that his income on that date was less than his income listed on his Schedule D, although he did not testify to the amount of his current income. (*See* Trial Tr. at 45–46.) Therefore, on the date of trial, Debtor's household monthly income was apparently less than the $2,556.66 that·Debtor listed in his petition, and less than

the amount that the Bankruptcy Court used to determine his ability to pay. In contrast, Debtor testified that his expenses, as listed in his Schedule J, had not changed as of the date of trial. (*See id.* at 40–41.) On remand, the Bankruptcy Court should determine Debtor's household income and, hence, his ability to pay as of the date of trial.

■ Next, Ms. Cameron argues that the Bankruptcy Court erred by not giving the $28,500 judgment priority over Debtor's unsecured debt to his mother, Oneida Cameron. (*See* Br. of Appellant at 8.) Because the debt to Debtor's mother is unsecured, Ms. Cameron contends that under 11 U.S.C. § 507(a)(7) the $28,500 judgment has priority over this debt. (*See id.*) Therefore, she argues that the $200 that Debtor pays each month to his mother should be added to his disposable income in determining his ability to pay the judgment. (*See id.*)

The Bankruptcy Court listed the $200 that Debtor currently pays to his mother each month as one of his expenses, without considering the priority issue. (*See* Final J. at 10–11 n. 18.) Although Debtor listed this debt to his mother as a secured debt in his Schedule D, (*see* Bankruptcy Pet., Schedule D,) at trial he admitted that this debt is in fact unsecured. (*See* Trial Tr. at 43–44, 47.)

Section 507(a)(7) of the Bankruptcy Code gives a priority to:

> [A]llowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt—

---

7. Ms. Cameron does not dispute that this figure represents Debtor's monthly household

income on the date he filed his petition.

(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 507(a)(7). The language contained in § 507(a)(7) and § 523(a)(5) is practically verbatim. "Because the language of the two sections is [virtually] identical, if the debt is non-dischargeable under section 523(a)(5) it receives priority status under section 507(a)(7)." *In re Crosby*, 229 B.R. 679, 681 (Bankr.E.D.Va. 1998); *see also Weisberg v. Abrams (In re Weisberg)*, 218 B.R. 740, 755 (Bankr. E.D.Pa.1998); *In re Costanza*, 215 B.R. 588, 590 (Bankr.W.D.Mo.1997). Similarly, if the debt is not of the type described in § 523(a)(5), and thus not excepted from discharge under that provision, it is not entitled to priority under § 507(a)(7). *See Costanza*, 215 B.R. at 592.

As discussed, the judgment at issue in this case was issued pursuant to a property settlement and is not in the nature of alimony, maintenance, or support. Neither party has argued that the judgment is non-dischargeable under § 523(a)(5). Instead, both parties contend, and the court has agreed, that the judgment represents the type of debt described in § 523(a)(15). Because the judgment is not excepted from discharge under § 523(a)(5) it is not entitled to priority under § 507(a)(7). Therefore, the court finds no merit in Ms. Cameron's argument that the $200 payment that Debtor is currently making each month against the unsecured debt to his mother should be added to his monthly disposable income for purposes of determining his ability to pay the judgment. Accordingly, the court finds that the Bankruptcy Court did not err when it included this $200 monthly payment as one of Debtor's expenses.

■ Finally, Ms. Cameron argues that any income that Debtor has remaining each month, once he has paid his expenses, should go toward paying the judgment. (*See* Br. of Appellant at 9–10.) She contends that the Bankruptcy Court erred by not considering whether to grant Debtor a partial discharge from his obligation to pay the judgment, based on its finding that Debtor had disposable monthly income of $102, or more. (*See id.*)

For two reasons, the court will not address the partial discharge issue: First, it was not addressed by the Bankruptcy Court; and second, the Bankruptcy Court must first determine Debtor's disposable income at the date of trial before any otherwise proper assessment of a partial discharge becomes practical. The court, however, directs the Bankruptcy Court to consider on remand the merits of granting Debtor only a partial discharge, once it has determined Debtor's disposable income at the time of trial. Furthermore, because it found that Debtor's obligation to pay the judgment was dischargeable under the ability to pay exception to § 523(a)(15), the Bankruptcy Court did not consider whether Debtor's obligation to pay the judgment is dischargeable under the alternative exception to § 523(a)(15), listed in subsection (B). (*See* Final J. at 12 n. 20.) On remand, the Bankruptcy Court is directed to evaluate the merits of discharging Debtor's obligation to pay the judgment under § 523(a)(15)(B), if necessary, after determining Debtor's ability to pay based on his disposable income on the date of trial and the merits of granting Debtor only a partial discharge.

### ORDER

Based on the foregoing, it is CONSIDERED, ORDERED, and ADJUDGED that the judgment of the Bankruptcy Court be and the same is hereby REVERSED and REMANDED for further proceedings consistent with this order.