In re Russell E. MORRIS, III and Debra L. Morris, Debtors.

Blenda Darlene MORRIS, Plaintiff,

v.

Russell E. MORRIS, III, Household Finance Consumer Discount Company, a corporation, Defendants.

Bankruptcy No. 95–11108.
Adv. No. 96–1005.

United States Bankruptcy Court,
N.D. West Virginia.

June 17, 1996.

---

Darnell Ringer, Morgantown, WV, for Plaintiff.

J. Douglas Crane, Morgantown, WV, for Defendants and Debtors.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

Currently before the Court is the Adversary Proceeding initiated by Blenda D. Morris (hereinafter "Plaintiff") against her former spouse, Russell E. Morris III (hereinafter "Debtor"). In this proceeding, Plaintiff seeks to have Debtor's obligation to pay a marital debt pursuant to a property settlement agreement entered into between the parties at the time of their divorce held to be a nondischargeable debt owed to her pursuant to 11 U.S.C. § 523(a)(15). A trial was held on the issues presented in this case on May 30, 1996 and the case is now ripe for decision. With this opinion, the Court enters the fray with the handful of other bankruptcy courts that have wrestled with the provisions of the relatively new code section 523(a)(15) and will attempt to provide guidelines for future application of that section by practitioners in this district.

■ The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). By the inclusion of § 523(a)(15) within the provisions of § 523(c)(1) of the Bankruptcy Code, federal courts have been granted exclusive jurisdiction to hear and determine the dischargeability of debts under that new code provision. *See In re Smither*, 194 B.R. 102, 106 (Bankr. W.D.Ky.1996); *In re Hesson*, 190 B.R. 229, 236 (Bankr.D.Md.1995).

## FACTS

The relevant facts in this case are relatively straightforward. On or about January 27, 1992, Plaintiff and Debtor entered into a "Revolving Loan Agreement" with Household Finance Consumer Discount Company for an unsecured loan of $6,000 (hereinafter referred to as "the Household loan." or "the Household debt"). The loan proceeds were used to purchase a work vehicle for Debtor. Plaintiff and Debtor were thereafter divorced by Order of the Circuit Court of Monongalia County on April 20, 1993. In its Final Decree, the circuit court ratified and confirmed a Separation and Property Settlement Agreement executed by the parties on March 24, 1993. In relevant part, the agreement indicates that "[n]o alimony or separate maintenance shall be due to either party at any time and both parties hereby forever waive any right that he or she may have to such an award of alimony." Also, the car purchased with the proceeds from the Household loan was to remain in Debtor's possession. Furthermore, and of primary importance here, paragraph 15 indicates that:

> [Debtor] shall be solely responsible for . . . the remaining debt owed to Household Finance, . . . and shall hold [Plaintiff] free, clear, and harmless from any remaining loss or obligation upon said debt . . .

On or about August 14, 1995 Household Finance brought suit against both Debtor and Plaintiff seeking to collect the sum of $6,684.43 on the January 27, 1992 loan. Blenda Morris answered and filed a crossclaim, indicating that the debt had been assigned to the Debtor pursuant to the divorce decree and was his responsibility. Debtor and his new wife filed for relief under Chapter 7 of the Bankruptcy Code on September 29, 1995. Among the debts listed in their schedules was that owed to Household Finance. By Order dated January 19, 1996 Debtor obtained a discharge of his liability for the Household Finance debt, leaving Plaintiff personally responsible for its payment. It is the obligation to pay the Household debt which Plaintiff now seeks this Court to declare nondischargeable.

Both parties agree that the obligation contained in the Settlement Agreement to pay the Household loan is in the nature of a property settlement and therefore is dischargeable under 11 U.S.C. § 523(a)(5). The focus then shifts to § 523(a)(15) and in order to analyze this case pursuant to that section, the Court required both parties to submit current financial data respecting their assets, liabilities, income and expenses.[1] A review of such information regarding Debtor and his new spouse indicates the following:

Assets:[2]

| | |
|---|---|
| Home | $69,000 |
| 1983 Mitsubishi | $ 500 |
| 1985 Volkswagen | $ 250 |
| 1987 Nissan | $ 1,500 |
| Household Goods | $ 1,000 |
| Furniture | $ 1,000 |
| Appliances | $ 1,400 |
| Jewelry | $ 200 |
| Total | $74,850 |

Liabilities:

| | |
|---|---|
| 1st Deed of Trust | $53,000 |
| 2nd Deed of Trust | $17,000 |
| Car Loan | $ 5,500 |
| Child Support Arrearage | $ 4,226 |
| Medical Bills | $ 2,000 |
| Total | $81,726 |

Debtor's income statement reflects the following:

Net Income:

| | |
|---|---|
| US Army Disability Benefit | $ 91/mo. |
| Child Support (for step daughter) | $ 116 |
| Debtor | $ 1,239 |
| New Spouse | $ 1,446 |
| Total | $ 2,892/mo. |

Monthly Expenses:

| | |
|---|---|
| Mortgage | $ 1,048 |
| Utilities | $ 252 |
| Home repair | $ 50 |
| Food | $ 500 |
| Clothing | $ 100 |
| Laundry | $ 20 |
| Medical/Dental[3] | $ 217 |
| Transportation | $ 200 |
| Recreation | $ 50 |
| Auto Insurance | $ 100 |
| Car Payment | $ 242 |
| Child Support | $ 403 |
| Step-daughter's College Expenses | $ 300[4] |
| Total | $ 3,482 |

1. The Court notes that the format of Forms SCA–DR 101 (Property & Debts Statement) and SCA–DR 102 (Alimony Information Statement), as promulgated under W.V.R.P.P.F.L. Rule 11, W.Va.Code § 48–2–33, and used in the Family Law Master system in the State of West Virginia is convenient for the litigants and helpful to the Court. Completion of such forms will become a common requirement in future cases under § 523(a)(15).

2. Debtor lists among his assets a pension plan and whole life insurance policy which, for reasons articulated herein, will not be considered by the Court.

3. Debtor's new wife incurred substantial medical expenses as a result of back and gall bladder surgeries which were required post-petition. Aggregate total of medical bills = $54,300. At trial, Debtor's wife estimated that she would remain liable for at least $2,000 of the aggregate amount, or $167/month, after insurance proceeds were distributed. Debtor estimated other monthly medical/dental expenses at $50/month.

4. Includes $158/mo. to Rent-a-Center for a computer.

At trial, Debtor's new spouse indicated that, due to recent medical problems, she has been unable to work full-time, will soon lose her status as a salaried employee, and will be relegated to an hourly wage for approximately thirty hours per pay period for an unknown period of time.

Conversely, Plaintiff's documentation reflects the following:

Assets:

| | |
|---|---|
| Home | $30,000 |
| 1994 Pontiac | $ 8,500 |
| 1987 Honda | $ 4,000 |
| Furniture | $ 300 |
| Appliances | $ 100 |
| Total | $42,900 |

Liabilities: [5]

| | |
|---|---|
| 1st Deed of Trust | $28,000 |
| 1994 Pontiac | $ 9,690 |
| 1987 Honda | $ 6,000 |
| Montgomery Ward | $ 1,525 |
| Visa | $ 3,900 |
| J.C. Penney (Clothing) | $ 350 |
| Fashion Bug (Clothing) | $ 270 |
| Norwest Financial | $ 418 |
| Total | $50,153 |

Income:

| | |
|---|---|
| Child Support | $ 403/mo. |
| Wages [6] | $ 1,874 |
| Total | $ 2,777/mo. |

Expenses:

| | |
|---|---|
| Mortgage | $ 312 |
| Utilities | $ 195 |
| Food | $ 400 |
| Clothing | $ 200 |
| Personal Care | $ 150 |
| Medical/Dental | $ 50 |
| Transportation | $ 75 |
| Auto Insurance | $ 128 |
| Home Insurance | $ 17 |
| Property Tax | $ 45 |
| Car Payment | $ 404 |
| Norwest | $ 55 |
| M. Ward | $ 47 |
| Visa | $ 100 |
| J.C. Penney | $ 50 |
| Fashion Bug | $ 35 |
| Total | $ 2,263 |

## DISCUSSION

Given the brief period of time in which § 523(a)(15) has been in existence, no generally accepted analytical guidelines for deciding nondischargeability under that section have been formulated in the Fourth Circuit

---

5. Plaintiff also listed a debt of $1005 owed to her employer, West Virginia Radio Corp. However, at trial she indicated that she was to pay $400/month on said debt from January, 1996. By the Court's calculations, said debt should now be paid in full.

6. The average net monthly figure was derived by the Court by taking the average of Plaintiff's last three years of gross income ($34,593), dividing by 12 ($2883/mo.), and multiplying said figure by .65 ($1,874). .65 was used as a multiplier because it appears from Plaintiff's submitted pay stubs that she nets, on average, 65% of her gross pay per period.

or any other. Therefore, the Court feels it necessary to set out such a framework before proceeding with the merits of this case.

Congress, with the enactment of the Bankruptcy Reform Act of 1994, created a new exception to a debtor's discharge under 11 U.S.C. § 523(a)(15). The section was added by Congress to cover those obligations arising out of a divorce decree or separation agreement which are not in the nature of alimony, maintenance or support under 11 U.S.C. § 523(a)(5), but which, for public policy reasons, should not justifiably be discharged. As the legislative history indicates:

> In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such 'hold harmless' and property settlement obligations are not found to be in the nature of alimony, maintenance, or support they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. This subsection will make such obligations nondischargeable in cases where the debtor has the ability to pay them and the detriment to the nondebtor spouse from their nonpayment outweighs the benefit to the debtor of discharging such debts.

140 Cong.Rec. H 10770 (Oct. 4, 1994).

The statutory language of section 523(a)(15) indicates that a discharge under sections 727, 1141, 1228(a) & (b) and 1328(b) does not discharge an individual from any debt:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance

> or support of the debtor and, if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor

The cumbersome wording of this section has prompted some judges to describe it as legislative sausage. *In re Hesson,* 190 B.R. at 237 (quoting *In re Butler,* 186 B.R. 371, 373–375 (Bankr.D.Vt.1995)). Others have described it as "a paving stone on the road to the region of Hades reserved for litigation nightmares." *In re Smither,* 194 B.R. at 106. However, for ease of comprehension, the legislative history paraphrases the language of section 523(a)(15), indicating:

> In other words, [property settlement obligations] *will remain dischargeable if* paying the debt would reduce the debtor's income below that necessary for the support of the debtor and debtor's dependents.... The debt will also be dischargeable *if* the benefit to the debtor of discharging [the property settlement obligation] outweighs the harm to the obligee.

140 Cong. Rec., *supra* (emphasis added)

Since section 523(a)(15)'s enactment, courts and commentators have identified several issues which the Court will address when applying § 523(a)(15) to the facts of this case.

## A. BURDEN OF PROOF

■ Due perhaps to § 523(a)(15)'s awkward articulation, one of the most contested issues in this area to date centers on the allocation of the burden of proof with regard to this exception to discharge. Generally, the burden of proving nondischargeability is borne by the creditor objecting to discharge, who must meet that burden by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287–290, 111 S.Ct. 654, 659–661, 112 L.Ed.2d 755 (1991). In the context of § 523(a)(15), the courts appear to be in agreement that the creditor/plaintiff has the initial burden of proving that the debt at

issue is not in the nature of alimony, maintenance or support and that the debt was incurred in the course of a divorce or separation, or in connection with a separation agreement, divorce decree or other qualifying order. Such findings appear to comport with the legislative history, which indicates:

The exception applies only to debts incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital debts that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation to the spouse or former spouse—an obligation to hold the spouse or former spouse harmless—which is within the scope of this section.

140 Cong.Rec. H, *supra* (citing *In re MacDonald*, 69 B.R. 259, 278 (Bankr.D.N.J. 1986)).

Beyond allocation of this initial burden, however, the reported cases split into several factions. In cases such as *In re Straub*, 192 B.R. 522 (Bankr.D.N.D.1996), a number of courts have found that § 523(a)(15) establishes a rebuttable presumption of nondischargeability upon the debtor which places the burden of proof upon him to establish that he either has the inability to pay the obligation at issue under § 523(a)(15)(A), or that discharging such debt confers upon him a benefit which outweighs any detrimental effect to the former spouse under § 523(a)(15)(B). *See also; Matter of McGinnis*, 194 B.R. 917, 920 (Bankr.N.D.Ala.1996); *In re Morris*, 193 B.R. 949, 952 (Bankr. S.D.Cal.1996); *In re Simons*, 193 B.R. 48, 50 (Bankr.W.D.Okla.1996); *In re Gantz*, 192 B.R. 932, 935 (Bankr.N.D.Ill.1996); *In re Slover*, 191 B.R. 886, 891–892 (Bankr. E.D.Okla.1996); *In re Owens*, 191 B.R. 669, 672–673 (Bankr.E.D.Ky.1996) (elements of subparts (A) and (B) deemed true affirmative defenses); *In re Florez*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995); *In re Anthony*, 190 B.R. 433, 436 (Bankr.N.D.Ala.1995); *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio

1995); *In re Woodworth*, 187 B.R. 174, 177 (Bankr.N.D.Ohio 1995); *In re Becker*, 185 B.R. 567, 569 (Bankr.W.D.Mo.1995); *In re Hill*, 184 B.R. 750, 753 (Bankr.N.D.Ill.1995) (debtor must plead and prove inability to pay or overriding benefit of discharge as affirmative defenses).

At the other end of the spectrum are cases such as *In re Dressler*, 194 B.R. 290 (Bankr. D.R.I.1996) and *In re Butler*, 186 B.R. 371 (Bankr.D.Vt.1995) which hold that the creditor/plaintiff bears both the burden of production and proof on all elements of nondischargeability under § 523(a)(15). The court, in *Butler*, relying on an analysis of the *Grogan v. Garner* decision and Congressional silence on the subject, distinguished § 523(a)(15) from student loan cases under § 523(a)(8), where the debtor has the burden of establishing undue hardship in order to obtain a discharge of those types of obligation, concluding:

The context of (a)(15) hearings, their commencement and substance, leads us to the inescapable conclusion that the objecting creditor must bear the burden of proof. Congress may have removed or lessened the effect of the presumption of discharge of debts not falling under § 523(a)(5) by enacting § 523(a)(15), but it did not, however, by enacting (a)(15) create an opposing presumption in favor of the creditor. Eliminating one presumption does not automatically create a presumption for the other side. Our ruling today is consistent with the legal theory that exceptions to discharge are to be narrowly construed against the creditor.

*Id.* at 374–375.

An intermediate position has been found by a few courts who hold that the burden of going forward or of production shifts, to varying degrees, to the debtor upon the creditor/plaintiff's satisfaction of their initial burden, but that the ultimate burden of proof remains upon the creditor/plaintiff to establish the elements of § 523(a)(15). *See, In re Silvers*, 187 B.R. 648, 649 (Bankr.W.D.Mo. 1995) (burden of going forward on both elements shifts to debtor); *In re Taylor*, 191 B.R. 760, 764–765 (Bankr.N.D.Ill.1996) (burden of coming forward shifts to debtor); *In*

*re Hesson*, 190 B.R. at 238–239 (burden of going forward and burden of proof bifurcated). In *Hesson*, Chief Judge Mannes held:

> [The] Plaintiff must file a timely adversary proceeding and prove a cause of action based upon a debt incurred by debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other qualifying order. Once Plaintiff has overcome this obstacle, this court finds that the burden of going forward and the burden of proof is bifurcated. If the debtor can show the inability to pay the § 523(a)(15) debt then the examination stops. There is no motivation for plaintiff to meet that burden. However, if the debtor can afford to make the payment, then the plaintiff has the burden, as is the norm in dischargeability actions, to show that the detrimental consequences outweigh the benefit to debtor. This bifurcation results in placing the burden upon the party more able to present evidence. Thus the debtor must plead the affirmative defense of § 523(a)(15)(A) or waive it. In that event, the court goes immediately to the issues of § 523(a)(15)(B) where plaintiff has the burden of proof.

*Id.*

■ This Court finds the reasoning of the court in *Hesson* persuasive, and hereby adopts that court's analysis. As established by the court in *Butler*, supra, adequate grounds do not exist to justify a shift in the burden of proof from the creditor/plaintiff to the debtor in the context of an (a)(15) complaint. Absent express Congressional direction on this issue, the Court is of the opinion that the "fresh start" concept, as well as the generally accepted principle that exceptions to discharge are to be narrowly construed against the creditor weigh heavily in favor of requiring the creditor/plaintiff to ultimately satisfy the elements of § 523(a)(15) before holding a debt of the kind listed in that section to be nondischargeable. However, given the realities created by trying a case under (a)(15), the Court does not feel that requiring the debtor to present evidence as to his ability or inability to pay impinges upon the concepts listed above. Requiring the creditor/plaintiff to carry the burden of production on that issue would be cumbersome, at best, and the Court would simply rather cut to the chase. The debtor is in the best position to present evidence as to his ability to pay, so he should present it to the Court which would view the evidence as presumptively correct absent plaintiff's showing by a preponderance of the evidence that it is false.

In this case, both parties stipulated that the Household debt obligation was in the nature of a property settlement of the kind contemplated by § 523(a)(15). In light of this case being the Court's first foray into (a)(15), both parties were fully prepared to proceed with this trial on the merits as if each was required to maintain the burden of proof on the issues presented, therefore neither party was prejudiced by the Court's holding above.

**B. § 523(a)(15)(A)—ABILITY TO PAY**

■ In turning to the merits of this case, the Court must first determine whether Debtor has the ability to pay the Household debt. As indicated by the statutory language of § 523(a)(15)(A), such a determination is arrived at by subtracting those expenses "reasonably necessary" for the maintenance or support of the debtor and his dependents from his net income. Said language mirrors that of the "disposable income test" found in 11 U.S.C. § 1325(b)(2)[7], and most courts have seen fit to apply that test to the facts presented in this context. *See e.g., In re Morris*, 193 B.R. at 953; *In re Hesson*, 190 B.R. at 237; *In re Hill*, 184 B.R. at 754–55; *In re Phillips*, 187 B.R. 363, 368–69 (Bankr. M.D.Fla.1995). This Court also finds it appropriate to do so. In conducting such analysis, the Court will consider the combined

---

**7.** In pertinent part, Bankruptcy Code § 1325(b)(2) provides:

For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

244

annual income of the Debtor, as well as his current spouse. *See, In re Smither,* 194 B.R. at 108; *In re Comisky,* 183 B.R. 883 (Bankr. N.D.Cal.1995); *But see, In re Carter,* 189 B.R. 521 (Bankr.M.D.Fla.1995). Furthermore, the Court will also examine Debtor's listed expenses to determine whether they are reasonably necessary. *See, In re Smither,* 194 B.R. at 109; *In re Morris,* 193 B.R. at 949; *In re Slover,* 191 B.R. at 892; *In re Owens,* 191 B.R. at 674. However, no equitable factors figure into the Court's analysis of Debtor's ability to pay under Section 523(a)(15)(A). *See, In re Florez,* 191 B.R. 112 (Bankr.N.D.Ill.1995).

█ When conducting the analysis into the Debtor's ability to pay, the Court finds that the appropriate time at which to begin its inquiry is with the date of trial. *See, In re Gantz,* 192 B.R. at 934. Although several courts have concluded that the time of inquiry should be as of the filing of the (a)(15) complaint, or even farther back to the date of the filing of the petition, the court in *Hesson* explained the propriety of utilizing the date of trial as a starting point by indicating:

> For example, after the filing of the case, either party might have sustained a disabling injury or may have won the lottery, or have experienced a substantial change in earnings. Post-filing events could easily affect either debtor's ability to pay the debt or the balance between debtor's benefit from discharge and the detrimental consequences of discharge to the recipient. Use of a time substantially before the trial date could produce a silly result that mocks congressional intent.

*In re Hesson,* 190 B.R. at 237.

Turning its attention to the information provided by Debtor and his new spouse, the Court finds that with net income of $2,892 per month and expenses of $3,482, Debtor does not have the present ability to repay the Household Finance obligation. Although items such as $500 per month for food for a family of four, $100 per month for new clothing, and $200 per month for transportation appear to be slightly excessive, the Court notes that the Debtor's budget is currently at least $590 per month in the red. Any reduction in the above-mentioned items to a reasonable level would simply result in a closer break-even position for Debtor's household. Furthermore, Debtor's new spouse indicated that she would be experiencing a significant reduction in net income due to her reclassification as a part-time hourly rate employee, resulting out of problems with her recent medical condition. Such a reduction will work to put Debtor's household further in financial straits. Also, the Court finds no evidence of any "luxury" items in the monthly budget which could be taken out to pay the obligation at issue, and notes that the listed items basically consist of amounts "sufficient to sustain basic needs without reference to the debtor's former status in society or the lifestyle to which he is accustomed" and are therefore considered reasonably necessary by this Court. *See, In re Hedges,* 68 B.R. 18, 20 (Bankr.E.D.Va.1986).

█ As Debtor's negative net worth would suggest, no assets are at his disposal from which he could be forced to pay the Household Finance obligation. Not listed among Debtor's assets was a small pension plan from which he receives no current monthly distributions and a $25,000 whole life insurance policy. Neither potential source of income will be considered by this Court. As the Fourth Circuit has recently articulated, unless a debtor is currently receiving monthly distributions from a pension or retirement fund, such assets are not to be figured into the disposable income analysis. *In re Solomon,* 67 F.3d 1128 (4th Cir.1995). As to the life insurance policy, no cash value was given for said asset, but given the Debtor's present age and circumstances, the Court cannot imagine said value being of more than a minuscule amount and therefore of no significant benefit to the Debtor's monthly budget.

In light of the foregoing, the Court finds that Debtor has produced evidence sufficient to establish his inability to pay the Household Finance obligation, to which Plaintiff has unsuccessfully challenged by a preponderance of the evidence.

**C. § 523(a)(15)(B)—BALANCING OF THE EQUITIES**

█ The Court's analysis of this case would normally be completed upon a finding

of Debtor's inability to pay the Household Finance obligation. However, as a guide to future practitioners under § 523(a)(15), the Court feels that it is appropriate to establish a framework for analysis of § 523(a)(15)(B) at this time.

Section (a)(15)(B) requires the Court to balance the detrimental effect to a spouse or former spouse of discharging a property settlement debt against the benefit of such discharge to the debtor. To accomplish this task, the Court will conduct a comparison of the relative financial conditions of the parties, while also keeping in mind the totality of each party's circumstances. While conducting such analysis, the Court is mindful that "the benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the non-debtor spouse that outweighs the debtor's need for a fresh start." 140 Cong.Rec., *supra*. Although no list of factors can be exhaustive, for purposes of this inquiry the Court will consider:

(1) Changes in the financial condition of the parties from the time of the divorce or separation to the filing of the bankruptcy petition;

(2) The relative income and worth of the parties and their respective spouses;

(3) A comparison of the parties' post-bankruptcy obligations;

(4) The amount and nature of the debt involved, and whether the nondebtor spouse is jointly liable on the debt;

(5) The health, job skills, training, age and education of the parties and their respective spouses;

(6) The number of dependents of the parties and their respective spouses, their ages and any special needs which they might have; and

(7) Whether the objecting creditor is eligible for relief under the Bankruptcy Code.

*See, In re Smither,* 194 B.R. at 111; *In re Anthony,* 190 B.R. at 437; *In re Hill,* 184 B.R. at 756.

In this case, the parties are arguing over a debt of approximately $6,800 for which both were originally liable. With the filing of Debtor's bankruptcy, his personal liability for that debt to Household Finance was discharged. Plaintiff contends that the burden of paying back said debt would substantially inhibit her ability to maintain the lifestyle to which she and her daughter are now becoming accustomed to after her divorce from Debtor. Brief review of Plaintiff's monthly income and expenses indicates that she enjoys a surplus of approximately $500 per month.[8] Said amount could easily be used to repay the Household Finance debt without impairing Plaintiff's current budget. Conversely, Debtor's position is much more precarious. Although benefitted by the discharge obtained in the underlying bankruptcy, Debtor's new spouse has incurred substantial medical bills post-petition for ailments which will cause her to lose a significant portion of her prior net monthly earnings for an undetermined amount of time. The combination of an increased debt load and decreased income stream paints a financial picture for Debtor's household which is as bleak as it was prior to his filing, if not more so.

In sum, the Court finds that when the parties' relative positions are analyzed with an unbiased eye in a setting free from the bitter feelings and acrimony the parties have for one another, the Plaintiff would suffer little detriment from Debtor's non-payment of the Household Finance obligation even though she now finds herself solely obligated to repay said debt and has been sued for its recovery. The Court does not feel that repayment of that obligation would result in Plaintiff having to seek the protection of the bankruptcy forum, however, that option is not precluded. Given the circumstances as they now exist, the Court finds that the detrimental consequences to Plaintiff resulting from Debtor's failure to repay the Household Finance debt do not outweigh the benefit which discharge of that obligation will have upon Debtor.

---

8. $400 of said surplus had been going for repayment of Plaintiff's employer on a loan obtained to purchase a computer for her daughter. By her own testimony, said obligation should be repaid in full at or near the time of this writing.

For the foregoing reasons, it is hereby **ORDERED** that Debtor's obligation to pay the indebtedness to Household Finance Consumer Discount Company, pursuant to the divorce decree entered on April 20, 1993 by the Circuit Court of Monongalia County, is not of a kind entitled to nondischargeability under 11 U.S.C. § 523(a)(15) and will be discharged along with Debtor's other prepetition obligations pursuant to 11 U.S.C. § 727(b), with the concomitant injunctions against enforcement outlined in 11 U.S.C. § 524(a) in full effect.