**In re Cary Thomas METZGER, Debtor.**

**Angela B. Sparagna, Plaintiff,**

v.

**Cary Thomas Metzger, Defendant.**

**Bankruptcy No. 97–34095–T.**
**Adversary No. 97–3140–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 28, 1999.

James E. Kane, Chaplin, Papa, Gonet, Richmond, VA, for Plaintiff.

John F. Ames, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On September 24, 1998, the court held trial on Angela B. Sparagna's complaint to except debts from discharge pursuant to 11 U.S.C. § 523(a)(6) & (a)(15), on the plaintiff's motion for sanctions, the debtor/defendant's cross-motion for sanctions

and debtor's motion for summary judgment. At trial the court denied the debtor's motion for summary judgment and found the section 523(a)(6) debt to be excepted from discharge.

The section 523(a)(15) debt is composed of two separate debts under a property settlement agreement: one to Wachovia Visa and one to NationsBank Visa. At the conclusion of the evidence, the court took the section 523(a)(15) debt and the motions for sanctions under advisement. For the reasons stated below, the Wachovia Visa debt will be excepted from discharge and the NationsBank Visa debt will be discharged. The plaintiff's motion for sanctions and the debtor's cross-motion are denied.

### Findings of Fact

Plaintiff and debtor were married on April 9, 1989; the marriage ended in August 1995. As part of the divorce decree the parties entered into an equitable distribution property settlement agreement on March 7, 1996. The agreement included a provision that the plaintiff was to pay $81.92 on her portion of the marital debt owed to NationsBank Visa, and in return the debtor was to assume the balance of the credit card debt.[1] Currently the parties owe $2,748.71 to Wachovia Visa and $2,087.36 to NationsBank Visa. No payments have been made on either credit card since the entry of the property settlement agreement in 1996.

The marriage and its dissolution can only be described as tumultuous. After the parties' separation, Mrs. Sparagna charged the debtor with malicious wounding (amended to assault and battery), brandishing a firearm, and threatening phone calls. After trial on the merits in March 1995, the Juvenile and Domestic Relations Court of Henrico County found the debtor guilty on all three counts. That court later dismissed the firearm and phone call counts and entered a restraining order against the debtor.

Following the conclusion of the criminal case, Mrs. Sparagna initiated the civil suit *Angela B. Sparagna v. Cary T. Metzger*, Law No. CL95–2023 in the Circuit Court of Henrico County charging the debtor with assault and battery, intentional infliction of emotional harm, defamation, malicious prosecution, and false imprisonment. Mrs. Sparagna requested $1 million in judgment against the debtor.

The parties resolved the civil suit through a settlement agreement entered February 11, 1997. Under the settlement, debtor agreed to pay Mrs. Sparagna $10,-000.00. The payment terms required an initial payment of $7,500.00 by March 1, 1997, with the remainder to be paid by monthly payments of $104.17 commencing March 1, 1997.[2] The initial $7,500.00 payment was made and thereafter debtor made monthly payments until the bankruptcy filing. The sum of $1,982.30 remains due on the settlement agreement.

The debtor, Mr. Metzger, filed this bankruptcy case in June 1997.

### Conclusions of Law

#### The Settlement Agreement

The debtor argued at trial that the settlement agreement was a global settlement incorporating the parties' civil settlement and the two outstanding credit card debts at issue on the section 523(a)(15) claim.

The debtor relies upon paragraph third of the settlement agreement which states:

Ms. Sparagna hereby irrevocably and unconditionally releases, acquits and forever discharges Mr. Metzger and his

---

1. At trial, Mrs. Sparagna testified that the Wachovia account was current as of November 1995, and that it was her understanding that the account was closed. The account was subsequently re-opened, in December 1995 by the debtor, and charges were made on the account in name of both parties.

2. In the event monthly payments were not made Mrs. Sparagna was to receive 10 percent interest on the principal remaining due. To secure the $2,500.00 indebtedness Mrs. Sparagna was granted a security interest in a 1992 Honda Accord.

agents, personal representatives, executors, administrators, heirs, beneficiaries, successors, and assigns, from all complaints, demands, liabilities, charges, claims, agreements, damages, actions, causes of actions, suits, rights and expenses, including attorneys' fees, whether known or unknown, suspected or unsuspected, *specifically any and all claims asserting past assault and intentional infliction of emotional distress, and any and all claims that were asserted or could have been asserted in Law No. CL95–2023.*

(emphasis added).

■ At trial the court ruled, and so holds here, that the settlement agreement is not global in nature, and does not incorporate the debtor's property settlement debts to Mrs. Sparagna. Paragraph third uses broad boiler plate language which creates ambiguity, but its broad language is specifically limited by the last clause, which references the civil lawsuit. Nowhere does the settlement agreement reference the property settlement.

Furthermore, the settlement agreement states it is "the compromise of disputed claims." Settlement Agreement at ¶ First. At the time the agreement was entered into, the credit card debts of the marriage were not in dispute and therefore could not have constituted disputed claims. Accordingly, the agreement was not intended to be a global settlement between the parties but only to resolve the civil suit brought by Mrs. Sparagna.

### 523(a)(6) Claim

The debtor was found guilty of assault and battery, brandishing a firearm and

---

**3.** A debt will be excepted from a debtor's discharge pursuant to section 523(a)(15) if it is:

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

threatening phone calls. At trial in this court the parties re-litigated the underlying charges and produced extensive testimony from both Mrs. Sparagna and Mr. Metzger. The debtor, under oath, admitted to facts supporting the assault and battery charge. Mrs. Sparagna testified as to all three charges.

■ A debt is excepted from discharge pursuant to section 523(a)(6) "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). The court concludes that the debtor willfully and maliciously caused injury to Mrs. Sparagna. As a result the parties entered into the settlement agreement to compensate Mrs. Sparagna for her injuries. Accordingly, the remainder of the payments due to Mrs. Sparagna pursuant to the settlement agreement are excepted from the debtor's discharge pursuant to section 523(a)(6).

### 523(a)(15) Claim

■ Prior to the enactment of 11 U.S.C. § 523(a)(15) [3] an obligation of a debtor under a property settlement agreement entered into pursuant to a divorce or separation agreement was discharged if the obligation was not in the nature of alimony or support. Pursuant to section 523(a)(15), however, property settlement obligations may be excepted from the debtor's discharge provided the debtor has the ability to pay and the benefit to the debtor does not outweigh the detriment to the non-debtor spouse. *See* 11 U.S.C. § 523(a)(15).

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and . . . ; or
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse; former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15).

■ A majority of courts, including this one, have concluded that the burden of proof for section 523(a)(15) is initially with the non-debtor spouse who must first establish that the debt, which arose from a divorce or support agreement, is not in the nature of alimony or support. The burden then shifts to the debtor to prove either an inability to pay or that the benefit to the debtor outweighs the detriment to the non-debtor spouse. *See Craig v. Craig (In re Craig)*, 196 B.R. 305, 308 (Bankr.E.D.Va. 1996); *McGinnis v. McGinnis (In re McGinnis)*, 194 B.R. 917, 920 (Bankr. N.D.Ala.1996); *Collins v. Florez (In re Florez)*, 191 B.R. 112, 115 (Bankr.N.D.Ill. 1995). *But see Greenwalt v. Greenwalt (In re Greenwalt)*, 200 B.R. 909, 913 (Bankr.W.D.Wash.1996) (holding that the plaintiff bears the burden of proof for all elements of section 523(a)(15)); *Morris v. Morris (In re Morris)*, 197 B.R. 236, 243 (Bankr.N.D.W.Va.1996)(burden of going forward and burden of proof bifurcated).

Here, the parties agree that the credit card debts, if not incorporated into the civil suit settlement agreement, are governed by section 523(a)(15). Mrs. Sparagna, therefore, has sustained her burden of proof.

■ Section 523(a)(15) provides a disjunctive test; the debtor need only prove either inability to pay or that the benefit to the debtor outweighs the detriment to the plaintiff. *See* 11 U.S.C. § 523(a)(15); *In re Craig*, 196 B.R. at 309; *Florez*, 191 B.R. at 115.

At issue before the court are two separate debts: one to Wachovia for $2,748.71 and one to NationsBank for $2,087.36. Section 523(a)(15) speaks of "such debts" owed to the former spouse. *See* 11 U.S.C. § 523(a)(15)(A), (B). The language suggests that each liability may be separately analyzed. *See In re Greenwalt*, 200 B.R. at 914; *In re Craig*, 196 B.R. at 309–11. Furthermore, while the focus of subsection (a)(15)(A) is entirely on the debtor; subsection (a)(15)(B) requires an assessment of the benefits and burdens to the parties. It follows that some liabilities may affect the former spouse differently than others. *See* 11 U.S.C. § 523(a)(15)(A), (B); *In re Greenwalt*, 200 B.R. at 914. Accordingly, the court will assess each of the property settlement liabilities separately.

**(A) Ability to Pay**

■ The court does not determine the debtor's ability to pay at any specific point in time but whether the debtor may be able to pay the debt over time. *See In re Craig*, 196 B.R. at 305; *see also In re McGinnis*, 194 B.R. at 920; *In re Florez*, 191 B.R. at 115 n. 5; *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760, 767 (Bankr. N.D.Ill.1996).[4]

■ A debtor has an ability to pay if, after taking into account all reasonably necessary living expenses of the debtor and his or her dependents, there exists disposable income from which the debt could be paid. The language of section 523(a)(15) parallels that of section 1325(b), which lays out the disposable income test for a chapter 13 plan. Because of the similarities of the two sections, courts often refer to the disposable income test of section 1325(b) to determine if the debtor has an ability to pay pursuant to section 523(a)(15)(A). *See In re Craig*, 196 B.R. at 310; *Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674 (Bankr.E.D.Ky.1996); *In re Florez*, 191 B.R. at 115; *Carroll v. Carroll (In re Carroll)*, 187 B.R. 197, 200–

---

4. A uniform approach to the determination of a point in time to assess a debtor's ability to pay has not been established by the courts. Some courts hold that the appropriate point in time is when the debtor filed bankruptcy. *See In re Carroll*, 187 B.R. at 197; *In re Hill*, 184 B.R. at 754. In contrast, others adopt the time of trial. *See In re Morris*, 197 B.R. at

244; *Bodily v. Morris (In re Morris)*, 193 B.R. 949, 952 (Bankr.S.D.Ca.1996). It is debatable whether either of these tests adequately addresses the debtor's overall ability to pay. I prefer a totality of the circumstances approach to determine the debtor's ability to pay.

01(Bankr.S.D.Ohio 1995); *Hill v. Hill (In re Hill)*, 184 B.R. 750, 755 (Bankr.N.D.Ill. 1995). The test considers whether the debtor's expenses are reasonably necessary to the support of the debtor and the debtor's dependents.

■ Under the section 1325(b) analysis courts do not ordinarily re-adjust a debtor's expenses unless the debtor has included luxury items that do not qualify as reasonably necessary. *See* Collier on Bankruptcy ¶ 1325.08[4][b](Lawrence P. King ed., 15th ed. rev.1998); *see also In re Hill*, 184 B.R. at 754. While section 1325(b) may provide guidelines for a section 523(a)(15)(A) analysis, a comparable deference to the debtor's list of expenses is not warranted under section 523(a)(15)(A). *See In re Greenwalt*, 200 B.R. at 913; *see also In re Gamble*, 196 B.R. at 57 ("a debtor should not be allowed to manipulate his/her financial condition to the detriment of a former spouse," *citing Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr. W.D.Mo.1995)); *In re Morris*, 193 B.R. at 950–51.

### Calculating Reasonably Necessary Expenses

The debtor's current net pay is $2,020.00 per month with total claimed monthly expenses of $2,864.00.[5] According to the debtor, his monthly expenses exceed his income by over $600.00 per month. This result was verified at trial through testimony of both the debtor and his roommate that debtor borrowed a couple hundred dollars each month to cover expenses.

■ Initially, the court notes the debtor included in his monthly expenses $750.00 in payments to his attorneys for fees arising from this litigation. The statute speaks of expenses for the support and maintenance of the debtor and dependents of the debtor. *See* 11 U.S.C. § 523(a)(15)(A). While attorney fees may constitute a debt owed, they are not reasonably necessary for the support or maintenance of the debtor and his dependents. This conclusion is further supported by analogy to section 1325(b). When a debtor calculates disposable income in chapter 13, debts such as attorney's fees are not taken into consideration, as they are to be paid off through the administration of the estate with the disposable income calculated. Accordingly, attorney's fees do not constitute expenses reasonably necessary to the debtor or his dependents' support or maintenance and will not be considered in addressing a debtor's ability to pay.[6] *See Fitzsimonds v. Haines (In re Haines)*, 210 B.R. 586, 592 (Bankr.S.D.Ca.1997).

■ The court concludes the following expenses claimed by the debtor are unreasonably inflated: $645.00 per month for his half of housing expenses (composed of rent, utilities, telephone, cable, and home maintenance),[7] $300.00 per month food al-

---

**5.** The debtor's bankruptcy Schedules I and J revealed a current take-home income at filing of $864.00 per month and monthly expenses of $855.00. At trial, debtor testified that his financial status had changed since the bankruptcy filing in June 1997. This change occurred six months after filing when the debtor began a new job at higher pay and moved from his parent's home to an apartment which he currently shares.

**6.** In the case of *In re Owens*, the debtor prepetition acquired a loan to pay off debts owed to his former spouse pursuant to the parties' divorce. The loan was secured by a mortgage on the home of the debtor's mother. In evaluating the debtors's ability to pay, the court concluded that the $845.00 per month mort-

gage payment due on the loan could not be included in the debtor's monthly expenses, as the payment was not reasonably necessary to the debtor's support. That court further stated:

> [T]he priorities established by Congress in the enactment of § 523(a)(15)(A) elevate the obligation of the debtor to pay the debt created in the divorce agreement above his moral and legal obligation to pay the debt secured by his mother's home.

*In re Owens*, 191 B.R. at 674.

**7.** At trial debtor represented he paid one half of rent and utilities. The total rent payment was estimated at $700.00 per month, of which debtor's share is approximately $350.00. The court cannot conclude that the debtor's one

lowance,[8] and $150.00 per month for clothing and dry cleaning.[9] After re-evaluating the debtor's listed expenses the court concludes that the debtor has at least $250.00 and possibly as much as $350.00 per month disposable income, indicating an ability to pay.[10]

At trial the debtor testified his work contract would expire in November 1998 and that it would not be renewed. The debtor admitted, however, that he is qualified to continue at a similar job and pay level. The court anticipates that debtor will be able to obtain future employment, especially in light of the advance notice which he received.

The credit card debts have outstanding balances of $2,087.36 and $2,748.71, a combined total of $4,836.07 without interest or finance charges. Calculating a minimal monthly payment of $200.00 per month the debtor has the ability to pay off both debts in just over 25 months. The debtor has therefore not sustained his burden of proof that he is unable to pay off the credit card debts assumed pursuant to the parties' separation agreement.

(B) Balancing the Benefits and Detriments

■ Section 523(a)(15)(B) allows a marital debt to be discharged if the benefit to the debtor outweighs the detriment to the former spouse. A totality of circumstances approach is appropriate. Several factors are relevant: the income and expense of both parties, whether the non-debtor spouse is jointly liable on the debts, the number of dependents, the nature of the debts, the reaffirmation of any debts, and the non-debtor spouse's ability to pay. *See In re Craig,* 196 B.R. at 309; *In re Taylor,* 191 B.R. at 766; *In re Florio,* 187 B.R. at 659; *In re Carroll,* 187 B.R. at 201; *In re Hill,* 184 B.R. at 756.

■ In this case neither party is financially secure. Despite debtor's monthly disposable income of between $250.00 and $350.00 he testified at trial that he often has to borrow money from his current roommate. A discharge of either or both of the credit card debts would, of course, benefit the debtor. Mr. Metzger's current expenses (as opposed to those reasonably necessary for the debtor and his dependents' support and maintenance) exceeds his current income, in his own estimate by $844.00 per month.[11]

Mrs. Sparagna's finances are similarly precarious. Plaintiff's exhibit 11 lists Mrs. Sparagna's net pay per month as $2,223.16 with monthly expenses of $2,734.83. Mrs. Sparagna's current husband's net monthly pay is listed as $3,489.92 with monthly expenses of $3,258.37. Thus it appears that the Sparagna family's monthly expenses exceed their income by approximately $280.00 per month.

Although a discharge of both credit card debts would benefit the debtor, this would be a significant detriment to Mrs. Sparag-

---

half of utility, home maintenance (for an apartment), and telephone payments amount to an additional $295.00 per month. *See In re Carroll,* 187 B.R. at 197.

**8.** The debtor testified the amount reflected his habit of buying lunch at work at a cost of $3–4 per day, or between $60–80 per month. The debtor testified it would be inconvenient to take his lunch to work, but that no company policy required him to purchase lunch at work. *See In re Carroll,* 187 B.R. at 197. *Cf. In re Morris,* 197 B.R. at 244 (noting $500 per month food expenses for family of four excessive).

**9.** Again the debtor's estimates appear inflated. *Cf. In re Morris,* 197 B.R. at 244 (noting $100 per month for clothing excessive).

**10.** This calculation does not take into account the fact that the debtor will cease to have car payments of $205.00 per month in the summer of 1999.

**11.** Although, as noted above, attorney's fees are not appropriately included in calculating ability to pay, subsection (B) has a broader scope and is concerned with the equities of the parties. Thus, in considering the debtor's overall financial position it is appropriate to consider the attorney's fees owed by the debtor.

na and her family. Several courts have suggested that when the former spouse is financially unstable and discharging the debts will create a significant benefit to the debtor, the fact that the former spouse may be forced to file bankruptcy as a result of the discharge does not constitute a significant detriment to the former spouse. *See In re Morris,* 193 B.R. at 954; *In re Hill,* 184 B.R. at 756; *but see In re Slover,* 191 B.R. 886. The court in *Greenwalt,* however, suggested that where the former spouse is judgment proof, discharge may not be a harm, but when the former spouse is having financial difficulties and is not judgment proof the granting of discharge to the debtor creates a significant harm to the former spouse. *See Greenwalt,* at 915. This is such a case.

Mrs. Sparagna and her current husband own a home against which a judgment lien could attach. The family is currently juggling finances to make monthly payments despite an apparent deficit in income. To saddle the struggling family with both credit card debts may constitute the proverbial straw. Accordingly, the debtor has failed to sustain his burden of proof that the benefit of the discharge outweighs the detriment to Mrs. Sparagna.

■ The debtor has an apparent ability over time to pay the Wachovia credit card debt of $2,748.71. The court is not satisfied that the benefit of discharge of this debt to the debtor outweighs the detriment to Mrs. Sparagna and her new family. In contrast, to except both debts from discharge would greatly harm the debtor's fresh start. Although the debtor has apparent ability to pay these credit card debts, this finding does not take into account the debtor's mounting legal fees. Thus to except both debts would create a significant hardship, not outweighed by the detriment to Mrs. Sparagna.

The court therefore concludes that the debt to Wachovia will be excepted from discharge but that the debt to Nations-Bank will be discharged.

### *Sanctions*

■ The plaintiff, Mrs. Sparagna, filed a motion for sanctions. The debtor responded with a cross motion for sanctions. At the conclusion of the trial, the court took the motions under advisement. Throughout the pendency of this adversary proceeding the debtor has filed three separate motions to dismiss, a motion for a more definite statement, a counterclaim, a motion in limine, a motion to seal the settlement agreement, and a motion for cross sanctions in response to the plaintiff's motion. The court found in the defendant's favor with respect to the motion for a more definite statement and allowed the settlement agreement to be placed under seal. In the context of this case, the court concludes that sanctions are not appropriate.

An order consistent with this opinion will be entered.