In re Karen E. SEQUEIRA, Debtor.

Karen E. Sequeira, Plaintiff,

v.

Sallie Mae Servicing Corp., Wash. State Univ., Ore. State Univ., U.S. Dept. of Education, Educational Credit Management Corp., Defendants.

Bankruptcy No. 692–63217–FRA13.
Adversary No. 99–6239–FRA.

United States Bankruptcy Court,
D. Oregon.

Jan. 31, 2001.

Edward E. Hill, Eugene, OR, for debtor.

John Albert, Salem, OR, Herbert Sundby, Portland, OR, for defendants.

## MEMORANDUM OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

Plaintiff seeks a judgment declaring that her obligation to repay student loans should not be excepted from discharge. 11 U.S.C. § 523(a)(8). The case was tried on October 19, 2000 against the lone remaining defendant, U.S. Department of Education, and the record supplemented thereafter by consent. After consideration of the evidence presented, and post-trial arguments of the parties, I hold that payment of the entire debt would impose an undue hardship on the Plaintiff, and that the debt should be discharged to the extent it exceeds $13,047. My reasons follow.

## I. BACKGROUND

Plaintiff is a 55–year–old veterinarian. She began her training for her career late in life, and, as a result, is carrying a substantial student loan debt at an older age than most. She currently earns $45,500 per year. An accountant testified that her after-tax annual income would be $30,193, or $2,516 per month, based on an earlier gross wage of $43,306. From this I calculate her present monthly net income to be $2,615. Plaintiff's monthly budget requires expenditures of $2,439. Projected monthly expenses include modest rent ($600 a month) and utilities ($300 per month). The utilities charges include $100 per month in phone charges, which the Plaintiff justifies by noting that she has several children and grandchildren spread over considerable distances. She spends $600 a month on food and household items such as paper products, cleaning materials, and toiletries. She pays $120 a month in professional expenses, which includes the cost of mandatory continuing education involving attendance at seminars, occasionally at remote locations.

Finally, Plaintiff estimates $200 per month expense for the care of her 83 year old mother, which obligation she shares with a sister.

A rehabilitation counselor testified that the work expectancy of a 55 year Caucasian female was 7.4 years. Plaintiff's colleague and employer testified that retirement in one's early 60's is not unusual for a veterinarian.

The employer indicated that the Plaintiff had recently cut her work schedule from five to four days a week. The record is unclear as to whether this will affect her present income of $45,500 per annum.[1] Salaries are recalculated at the end of every year, taking the business' income into account. Testimony of both the counselor and the employer indicate that the Plaintiff's physical difficulties, including carpal tunnel syndrome and strained back, have an adverse, but not critical effect on her work. Her employer indicated that Plaintiff does good work, but occasionally needs help in lifting patients, etc.

Generally, the Plaintiff leads a frugal lifestyle. While some expenses may be questioned, her overall budget is not unreasonable. She has, since the student loans were incurred, paid a total of $10,309.72, to various lending entities. She is currently indebted to the United States Department of Education for approximately $40,000. She investigated a workout by way of a Ford loan[2], but saw no prospect of success, given her (relatively) advanced age and the minimum $300 per month payment.

## II. DISCUSSION

■ Bankruptcy Code § 523(a)(8) excepts from discharge debts incurred

> for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—
> ***

(B) excepting such debt from discharge will impose an undue hardship on the debtor and the debtor's dependents . . .

■ Courts in the Ninth Circuit have applied a three-part test to determine whether excepting a student loan debt from discharge will impose an undue hardship. The circumstances to be considered are:

1. The debtor's level of income at the time of trial, and whether the debtor can maintain a minimal standard of living if required to repay the loan;

2. Whether the circumstances contributing to the hardship are likely to persist for a significant period of time; and

3. Whether the debtor has made a good faith effort to pay the debt.

*Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir.1987), *accord In re Pena*, 155 F.3d 1108 (9th Cir.1998).

The question then arises whether, in applying the *Brunner* standard, the bankruptcy court must discharge all, or none, of the student loan debt, or may discharge only a portion of it. The power of a bankruptcy court to enter a "partial discharge" has been a matter of some controversy. Prior to 1998, bankruptcy courts in this District uniformly followed *In re Littell*, 6 B.R. 85 (Bankr.D.Or.1980). *Littell* held that the court had the equitable power to discharge a student loan to the extent that denial of discharge would cause undue hardship; that the part of the debt that could be paid without such hardship had to be paid. The Bankruptcy Appellate Panel

---

**1.** This is the gross income shown in Plaintiff's latest tax return.

**2.** A Ford loan usually involves consolidation of student loan debts, and amortization over 20 years. When the borrower reaches retirement age, the balance of the debt is forgiven. One problem with such loans is that the extent to which the debt is forgiven is taxable, resulting in tax liability without cash from which to pay it.

disavowed partial discharge in *In re Taylor*, 223 B.R. 747 (9th Cir. BAP 1998). The BAP reasoned that the reference to "such debt" in the exception portion of § 523(a)(8) (as opposed to explicit language allowing for partial discharge, such as: "to the extent failure to do so constitutes an undue hardship") meant that Congress required an all-or-nothing approach.

The issue appears to have been resolved in the Circuit by a recent case, *In re Myrvang*, 232 F.3d 1116 (9th Cir.2000). *Myrvang* involves discharge of a debt arising out of a dissolution of marriage. 11 U.S.C. § 523(a)(15).[3] The trial court, over debtor's objection, held that discharge of a marital debt (other than for support) was not limited to an all-or-nothing approach. The Court of Appeals agreed with the bankruptcy court, relying on *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998). In *Hornsby*, the Court of Appeals for the Sixth Circuit held that Code § 105[4] authorizes bankruptcy courts to enter partial discharges in student loan cases. The Court reversed the bankruptcy court's decision to discharge the entire loan obligation of a couple which, while "financially burdened" were still able to pay some of the debt.

Although the Bankruptcy Court should not have discharged the Hornsbys' entire student loans, we believe it had the power to take action short of total discharge. We find this authority in 11 U.S.C. § 105(a) [footnote omitted] which permits the bankruptcy court to 'issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title,' so long as such action is consistent with the Bankruptcy Act. [citation omitted].... In a student loan case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, and all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

*In re Hornsby*, 144 F.3d at 438–439.

The *Myrvang* court agreed with the Sixth Circuit's reasoning in *Hornsby*, stating that "Its analysis applies with equal force to dischargeability proceedings under § 523(a)(15)." *Myrvang* at 1123–1124. The court goes on to note that

construing the words 'such debt' to preclude partial discharge would run counter to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a). Therefore, we hold that a bankruptcy court has the discretion to order a par-

---

**3.** 11 U.S.C. § 523(a)(15) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
\*\*\*
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
(A) the debtor does not have the ability to pay *such debt* from income or property of the debtor not reasonably necessary to be

expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
(B) discharging *such debt* would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor; [emphasis added]

**4.** Code § 105(a):

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...."

tial discharge of a separate debt arising out of the terms of a divorce decree. *In re Myrvang,* 232 F.3d at 1124.

■ It is incontrovertible that the Court of Appeals deems partial discharge of student loan debts to be permissible when undue hardship would result if none of the debt is discharged, but the debtor has the ability to pay part of the debt. What remains is to reconcile this development with *Brunner* and *Pena.* The first element of the *Brunner* test has been said to require a finding that the debtor cannot maintain a "minimal" standard of living if forced to pay the debt. *In re Rosen,* 179 B.R. 935, 940 (Bankr.D.Or.1995). Construing *Brunner* to require that a debtor have no disposable income at all necessarily dictates an all or nothing approach: if there is *no* money available after necessary expenses, the debt is discharged in full. If there is, *Brunner* is not satisfied, and none of the debt is discharged.

■ In light of *Myrvang,* the first element of the *Brunner* test should be read to require that the debtor be unable to pay any part of the debt from remaining assets, or available post-petition income. If she cannot, and the other elements are satisfied, the entire debt is discharged. If she can pay part of the debt from disposable income, and the other elements are satisfied, the debt should be discharged, but only to the extent she is unable to pay.

■ Whether income is available for this purpose requires the same analysis required to determine "disposable income" in Chapter 13 cases [5]. The Chapter 13

disposable income standard was developed to determine the amount a reorganizing debtor should be allowed to retain for his, and his dependents', support and maintenance. There is no reason to believe that Congress intended a harsher standard in discharge analysis. A number of courts look to the disposable income concept to determine the amount to be paid in partial discharge cases. *See, e.g., In re Grine,* 254 B.R. 191 (Bankr.N.D.Ohio 2000) (Student loans), *In re Raimondo,* 183 B.R. 677 (Bankr.W.D.N.Y.1995) (Student Loans), *In re Crosswhite,* 148 F.3d 879 (7th Cir.1998) (Marital settlement under § 523(a)(15)), *In re Metzger,* 232 B.R. 658 (Bankr.E.D.Va. 1999) (§ 523(a)(15)). In these cases the debtor is, effectively, relieved of debts to the extent the debt exceeds the disposable income available to pay it. In other words, repayment requirements constitute an undue hardship to the extent they exceed income available after payment of necessary expenses for maintenance and support.

Plaintiff is presently able to make payments of $176.00 per month, the amount her after tax income exceeds her expenses. However, she will not be able to sustain that income for more than another seven and a half years, given her age and current medical difficulties. After that, the income from her professional practice will end, and her income available for loan payments will disappear as well.[6] In short, it may not work a hardship on the debtor to require loan payments today, but it undoubtedly will in the not too distant future.

---

**5.** 11 U.S.C. § 1325(b)(2) defines "disposable income" as:
  income which is received by the debtor and which is not reasonably necessary to be expended—
  (A) for the maintenance or support of the debtor, including charitable contributions . . . . and

  (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation and operation of such business.

**6.** While expenses attributable to her work will end, the net gain is far outweighed by the loss in income.

The debtor's age has been held to be a factor in student loan cases. *Brown v. Union Financial Svcs. Inc. (In re Brown),* 249 B.R. 525 (Bankr.W.D.Mo.2000). In that case the court held that requiring a 61–year old debtor to pay a student loan debt would work an undue hardship, given the approaching end of the debtor's earning capacity. While the Eighth Circuit has not adopted the *Brunner* approach, consideration of the debtor's prospective earning capacity is consistent with the requirement that the Court take into account the long term effect of debtor's current financial condition. If courts are to consider, for example, whether a current disability is persistent enough to justify discharge, there is no reason why disability sure to manifest itself in the foreseeable future should not be considered as well. The combination of Debtor's age and medical difficulties satisfies the first two parts of the *Brunner* test, or at least demonstrates that the time will come when the test will be met.[7]

■ What remains is a determination of the amount of the student loan claim, if any, to be excepted from discharge. As noted, a number of courts authorizing partial discharge have applied the "disposable income" concept found in Chapter 13 of the Code to determine the amount a debtor can pay without undue hardship. This approach brings to bear a coherent body of law developed in chapter 13 cases used to determine the debtor's income and reasonable and necessary living expenses, in order to determine the amount the debtor can devote to payment of claims. Once the extent of a debtor's ability to pay is ascertained, and the time over which payments can be made, the court can calculate a present value of the projected payments. To the extent the claim exceeds that pres-

ent value, it should be discharged under the undue hardship provisions.

Courts allowing partial discharge have taken a number of different approaches, such as:

1. Discharging separate notes, while not discharging others, *In re Hinkle,* 200 B.R. 690 (Bankr.W.D.Wash.1996), or discharging part of all loans, on a pro rata basis, *In re Raimondo,* 183 B.R. 677 (Bankr.W.D.N.Y.1995).

2. Discharging accrued interest or fees, *Griffin v. Eduserv,* 197 B.R. 144, 147 (Bankr.E.D.Okla.1996), or post-petition interest, *In re Miller,* 254 B.R. 200 (Bankr. N.D.Ohio 2000).

3. Providing for graduated payments, *Berthiaume v. PHEAA,* 138 B.R. 516 (Bankr.W.D.Ky.1992), set payments for a fixed period, with default provisions, *In re Kapinos,* 253 B.R. 709 (Bankr.W.D.Va. 2000).

Since the court's authority to allow partial discharge is premised on its equitable powers, the method may depend on the equities of each case. Here, there is only one loan—and only one lender—involved. The Court's task under § 523(a)(8) is to determine the extent, if any, that denial of discharge of the student loan debt will constitute an undue hardship. This requires determination of the amount which can be paid. The court should, when possible, leave it to the parties to determine the ultimate terms of repayment, either by looking to the terms of the contract, or by negotiation.

■ In this case the Debtor's budget does not include any expenditures "not reasonably necessary" for her own maintenance. She does help provide for her mother, who appears to depend on her for

---

7. Debtor has made over $10,000 in payments on student loans over the life of her Chapter

13 reorganization. There is no dispute that the third *Brunner* element has been satisfied.

part of her own support. Under § 1325(b)(2), a dependent, for whom the cost of providing support is a necessary and reasonable expense in calculating disposable income available to make plan payments, has been defined as "a person who reasonably relies on the debtor for support and whom the debtor has reason to and does support financially." *Leslie Womack Real Estate, Inc. v. Dunbar (In re Dunbar)*, 99 B.R. 320 (Bankr.M.D.La.1989). *See also In re Rigdon*, 133 B.R. 460 (Bankr.S.D.Ill.1991); *In re Collopy*, 99 B.R. 384 (Bankr.S.D.Ohio 1989); *In re Gonzales*, 157 B.R. 604 (Bankr.E.D.Mich.1993). The same logic applies in this context. After deducting her reasonable expenses ($2,439/month) from her current after-tax income ($2,615/month), $176 per month remains. Her current income is expected to continue for 89 months, calculated from the date of trial. Applying a discount rate of 5% (the interest charged by the government for these loans) the present value of the cash flow Debtor can sustain is $13,047. To the extent her student loan obligation exceeds this amount, it should be discharged.

### III. CONCLUSION

The Plaintiff's student loan debt should be discharged to the extent it exceeds $13,047. Interest accrues on the remaining balance at the contract rate. Payment terms should be determined according to the existing contract, so long as Plaintiff is not required to make monthly payments in excess of her disposable income.

This opinion constitutes the Court's findings of fact and conclusion of law. Counsel for Plaintiff shall lodge a form of order consistent with this opinion.